(Decided 13th July, 1867.)

GEORGE W. SMITH, Garnishee of Nicholas Leister, *vs.* WILLIAM B. McATEE.

*The Property of a Wife, not liable for her Husband's debts— Evidence—Conflict of Laws—Comity—Jurisdiction of the Courts of this State over the property of Married Women, within its limits—Lex Fori.*

A married woman became entitled by devise to certain real estate, which, under proceedings instituted to obtain a partition of the same, among the parties in interest, was sold; and the decree for the sale thereof provided, with the consent of the husband, who in his answer disclaimed all right, title or interest in the said real estate, that the proportion of the proceeds of the sale thereof, to be allotted to the wife, should be deemed her separate estate, free from any claim or control of her husband, or his creditors. The auditor, in pursuance of this decree, in his account distributing the proceeds of the sale, allotted to the sole and separate use of the wife, her proportion thereof, and the same was paid to her attorney. HELD:

Smith, Garnishee of Leister, *vs.* McAtee.

1. That the fund in the hands of the attorney of the wife, cannot be attached to answer a debt due by the husband.

2d. That the proceedings had and the decree passed for the sale of the real estate, was admissible evidence to show how the fund, which had been attached to answer for a debt of the husband, was derived, and that the conversion from realty into personalty, was not to prejudice the rights of the wife.

3d. That the residence of the husband and wife, at the time she became entitled to this fund, in the State of Illinois, where the husband by the law thereof, was entitled to all the personal property of the wife, did not vest the fund in him.

Comity is overruled by positive law, and it is only in the silence of any particular rule, affirming, denying, or restraining the operation of foreign laws, that Courts of justice presume a tacit adoption of them by their own government.

It is competent for any State to adopt laws to protect its own property, as well as to regulate it, and no State will suffer the laws of another to interfere with her own, and in the conflict of laws, where it must often be a matter of doubt, which shall prevail, the Court which decides will prefer the laws of its own country, to that of the stranger.

The Courts of this State have perfect jurisdiction over all personal as well as real property within its limits, belonging to a married woman, and they have a right to protect both from the debts of the husband; if, therefore, the legislative enactments of this State in regard to the property of the wife, and the laws of Illinois conflict, it cannot be made a question in the Courts of the former which shall prevail. Where there is no constitutional barrier, the Courts of this State are bound to observe and enforce its statutory provisions.

Where a fund is held for the sole and separate use of a married woman, a creditor of the husband seeking a remedy against him in the Courts of this State, must take the law as he finds it, and the judgment must be such as the law authorizes and allows.

Appeal from the Circuit Court for Washington County.

The facts of the case will be found presented with sufficient fullness in the opinion of the Court.

Two exceptions were taken in the Court below by the appellant; the first being to the rejection of certain testimony offered in evidence, is omitted, inasmuch as it was not considered by this Court.

2d Exception: Upon the evidence in the cause the plaintiff submitted the following prayers:

1. That the plaintiff here is not precluded or bound by the decree and orders of Court, passed in the proceedings for the sale and distribution of the proceeds of the real estate, devised by the will of Mary Gehr, deceased, given in evidence in this cause, not being a party to said proceedings.

2. If the jury find that the general rules and principles of the common law of England, in regard to husband and wife, and for regulating and determining their marital rights, have been adopted and made the rule of decision in the State of Illinois, by statute of that State, then, under the issue joined, and upon the facts admitted by the parties in this cause, and given in evidence to the jury, the plaintiff is entitled to recover.

3. That upon the facts admitted, and given in evidence to the jury, in connection with, and by the construction and effect of the statute law of the State of Illinois, also read in evidence, there is no evidence in the cause legally sufficient to support the plea of *nulla bona*, and the issue joined thereon.

4. If the jury believe what purports to be the statute of Illinois, read in evidence, to be in fact, the law of that State, then the facts admitted by the parties here, and given in evidence to the jury, by legal effect and operation of such law of the State of Illinois, do not constitute a legal defence for the garnishee in this cause; and therefore the verdict should be for the plaintiff.

5. If the jury find that the general rules and principles of the common law of England, in regard to husband and wife, and their marital rights, have been adopted by a statute of and for the State of Illinois, and that such marital rights in said State, are regulated and determined by said common law of England, so adopted, then upon the facts admitted and given in evidence, there is no evidence in

this cause legally sufficient to support the plea of *nulla bona*, and to entitle the garnishee to the verdict of the jury, under the issue joined on said plea.

The defendant asked the following instructions:

1. If the jury shall find from the facts admitted, and the evidence in this cause, that Mary Gehr, the mother of Sarah Leister, wife of Nicholas Leister, departed this life in the year eighteen hundred and fifty-five, leaving a last will and testament, by which she devised to the said Sarah, together with other of her children, her real estate, situate in Washington county ; and shall further find, that afterwards the bill of complaint offered in evidence, was exhibited and filed upon the Equity side of this Court, by certain of the devisees therein named, and that the said Nicholas Leister and Sarah Leister were made party defendants, and as such answered the same ; and further find, that the said Sarah, by her said answer, claimed the protection of said Court, as to her interest in said real estate, so devised to her ; and further find, that thereupon, and upon the whole proceedings in said cause in equity, the said Court decreed the sale of said real estate, and by said decree, provided that the " proportion of the proceeds of the sale of the said real estate of Sarah Leister, wife of Nicholas Leister, defendants in said cause, shall be deemed the separate estate of the said Sarah, for her sole and separate use and benefit, free from any claim or control of her said husband or his creditors, and that the separate receipt of the said Sarah shall be a full and complete discharge of said trustees for the payment thereof to her or her order ;" and shall further find, that said real estate was sold under said proceedings in equity by the trustees in said decree named, and the proceeds derived from said sale were brought into said Court of Equity by said trustees, and were distributed under the order of said Court to the devisees under said will; and further find, that the fund now in the hands of this defendant in this

Smith, Garnishee of Leister, *vs.* McAtee.

cause, as garnishee of the said Nicholas Leister, and sought to be condemned by the plaintiff under his said attachment, for the payment of his debt against the said Nicholas, was derived from the proceeds of the sale of said real estate, and was distributed under the order of the said Court of Equity, in said proceedings, to the said Sarah, and to her sole and separate use ; and shall further find, that the said fund so distributed, was, by said trustees, paid over to the defendant, George W. Smith, as the agent or attorney of the said Sarah, and that said defendant then and now holds the same as such agent or attorney; and shall further find, that said plaintiff, in this cause, was and is a citizen of the State of Maryland, and resides therein, that then the said fund, in the hands of the defendant, is not liable to be condemned in this action for the payment of the plaintiff's debt against the said Nicholas Leister.

2. If the jury shall find, that the fund sought to be condemned by the plaintiff, under his attachment in this cause, in the hands of the defendant, was set apart by the Circuit Court for Washington County, as a Court of Equity, by its decree passed in the proceedings in said Court, and offered in evidence in this cause, to the sole and separate use of the said wife of the said Nicholas Leister, and that the same was in the hands of the defendant, as her agent or attorney, at the time said attachment was laid in his hands, that then the same is not liable to be condemned in this action for the payment of the plaintiff's debt against the said Nicholas.

3. If the jury shall find, that the said defendant had not, at the time said attachment was laid in his hands, nor since, any money or credits belonging to the said Nicholas, that then the plaintiff is not entitled to recover, although the jury should further find, that there was and is money in the hands of the defendant, belonging to the said Sarah, wife of the said Nicholas Lester, as

of her own sole and separate estate, and to her and for her sole and separate use.

4. If the jury shall find, that at the time the said attachment was laid in the defendant's hands, there was money in his hands belonging to Sarah Leister, wife of the said Nicholas Leister, as of her own sole and separate estate, and to her and for her own sole and separate use, and not any other money or credits in his hands, then, since, or now, in any manner otherwise belonging to the said Leister or his said wife, that then the plaintiff is not entitled to recover.

5. If the jury shall find, that the fund sought to be condemned in the defendant's hands by the plaintiff, under his attachment in this cause, was of the proceeds of the sale of certain real estate, situate in Washington county ; and further find, that said real estate, or the portion thereof, whence by the said sale the said fund was derived, was acquired by the said Sarah Leister, wife of the said Nicholas Leister, after her marriage to the said Nicholas, and since the 30th day of June, A. D. 1853, by devise or bequest, that then the said fund is not liable to be condemned in this action for the payment of the plaintiff's debt against the said Nicholas.

6. That from the facts admitted and the evidence given in this cause, there is no money or credits in the hands of the defendant liable to be condemned for the payment of the plaintiff's debt against Nicholas Leister.

The Court (WEISEL, J.,) granted the prayers of the plaintiff, and rejected those of the defendant; to this ruling, the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BOWIE, C. J., BARTOL and CRAIN, J.

*James S. Franklin* and *Oliver Miller*, for the appellant.

By the provisions of the Act of 1841, ch. 161, the real estate of the wife is protected from the debts of the husband, and this protection extends to the proceeds of such estate when sold for partition. *Hall vs. Hall*, 4 *Md. Ch. Dec.*, 283. By virtue of the Act of 1853, ch. 245, all property acquired by the wife by devise, &c., is protected from the debts of the husband, and she is invested with the powers of a *feme sole*, as to property so devised; no trustee is required to protect it. *Unger and Wife vs. Price*, 9 *Md. Rep.*, 552.

Sarah Leister the wife, acquired this property under these laws. In the sale of the lands she was entitled under the equities secured by these laws to have the *status* of the *proceeds* fixed; so that being to her sole and separate use, her right would be recognized wherever the English law prevailed, and specially recognized in this State where property within its limits is in controversy. Besides, by equity jurisprudence the wife's equity is always protected and settlement made. Where the aid of Courts of equity is required by the husband to get his wife's property, he must make suitable provision for her. The wife's equity, as it is called, attaches to her personal property; it attaches whenever the property is within the jurisdiction of the Court, into whosesoever hands it may have come, or in whatever manner it may have been transferred. 1 *Greenleaf*, 11*th Edition*, 486,487; 10 *Marsh.*, &c., *Bode vs. Regman*, 217; 8 *Ad. & El.*, *S. C.*, 206; *Berrett vs. Oliver*, 7 *G. & J.*, 204; *Groverman and Wife vs. Diffenderffer*, 11 *G. & J.*, 15.

The same rule applies, whether the application be by the husband, or his representatives or assignees, to obtain possession of the property, or whether it be by the wife or her trustee, or by any person partaking of that character, praying for a provision out of that property. 2 *Kent*, 140; *Ridel vs. Kerney*, 3 *Cowen*, 599, 601-4; *Kenny vs. Udall*, 5 *Johns. Ch.*, 473; *Haviland vs. Myers*, 6 *Johns.*

Smith, Garnishee of Leister, *vs.* McAtee.

*Ch.,* 25 ; *Glen vs. Fisher,* 6 *Johns. Ch.,* 33 ; *Adams Equity,* top 162-3, *side* 48 ; 2 *Story's Equity,* 1404, '5, '7 and '8 ; and 1414, '15.

Therefore, under the laws of this State, and the general laws relating to the equity of the wife, the decree of the Court in this cause is perfectly maintainable as conferring upon the wife a property not attachable under the laws of this or of any other State.

The right to so decree being established as we maintain, is it binding upon the appellee, and does it so fix the property that it is not liable to this attachment ? The first prayer of the appellee submits the proposition that the decree was not binding on him, and it was granted. We maintain that the decree constituted a perfect right in the wife, as against any creditor or assignee. The claim by either to this property is through the husband and in no other way, and as against them or either of them the wife could be protected. It is a decree in *rem,* affecting the condition of the property and its future relations, and fixing its status, and everywhere binding. Decrees and proceedings in Chancery are equally admissible as a record at law, to show *rem ipsam* though between strangers. *Key vs. Dent, Adm. of Wood,* 14 *Md. Rep.,* 86 ; 4 *Phillips' Evidence,* (*note by Cowen & Hill,*) 920, 921 ; *Barney vs. Patterson,* 6 *H. & John.,* 182 ; *Guire vs. Thomas,* 7 *H. & John.,* 458-60 ; *House vs. Wiles,* 12 *G. & J.,* 338 ; *Maryland and Phenix Insurance Companies vs. Bathurst,* 5 *G. & J.,* 159 ; *Taylor & McNeal vs. Phelps,* 1 *H. & G.,* 502-3 ; *Wright vs. Wright's Lessee,* 2 *Md. Rep.,* 429, 451, '3, '4 ; *Gordon's Ex. vs. Mayor, &c., of Balt.,* 5 *Gill,* 231, 242, '3.

The Court had the jurisdiction and the right to pass this decree, and it is thereby made conclusive. *Fridge vs. The State, use of Kirk,* 3 *G. & J.,* 103 ; *Taylor & McNeal vs. Phelps,* 1 *H. & G.,* 502 ; *Carroll vs. Lee, Adm'r of Lee,* 3 *G. & J.,* 504 ; *Gardiner vs. Miles,* 5 *Gill,* 94 ; *Bowie vs. Jones,* 1 *Gill,* 208, 214.

Judgments and decrees have the same conclusive effect in other States as in the State where they were rendered. *Wernwag vs. Pawling,* 5 *G. & J.,* 500–7; *Brengle vs. McClellan,* 7 *G. & J.,* 434; *Gordon's Ex'r vs. Mayor, &c., of Balt.,* 5 *Gill,* 231; *Buchanan et al., vs. Lorman et al.,* 3 *Gill,* 51, 81.

Then upon the whole, recognizing the perfect jurisdiction of the Court in forming the decree, both under the Acts of Assembly and the equity of the wife as known to English equity jurisprudence, in fixing the *status* of the property attached, there can be no difficulty in coming to a correct conclusion upon general principles. The principle is well established as to a foreign judgment or decree in *rem*. If the matter in controversy be land, or other immovable property or movable property the judgment pronounced *in the forum rei sitæ* is held to be of universal obligation, as to all the matters of right and title, decided by it. Whatever the Court settles as to the right or title, or whatever disposition it makes of the property by sale, revendication, transfer, or other act will be held valid in any other country, where the same question comes directly or indirectly in judgment before any other foreign tribunal. *Story on Conflict of Laws,* secs. 532, 545, 551, 591, 592, 597; 1 *Greenleaf's Evidence,* secs. 541, 542, 543.

If this be so, is it not conclusive upon this case? Besides, is not this in the nature of a contract, and does it not carry with it into every foreign jurisdiction the law of the contract? This property was sold with the assent of the wife, and with the express understanding that it was to be to her sole use, free from the power of the creditors of her husband. The decree was made in conformity to the evidence. Her right was perfect under the laws of England, to the free and undisturbed enjoyment of her real estate. In compelling her to sell she was not to be damnified and deprived of her property, for, in fact, if the law be as urged by the appellee, it is nothing less than a confiscation

of it. It is maintained that the arrangement made in respect to and embodied in the form of law, and in the verity and solemnity of a decree or judgment of a Court of competent jurisdiction, clothes and carries with it the world over, all the force and obligation of the *lex loci contractus*, and it must have the same validity, interpretation and obligatory force in every other country which it has in the country where it was made.    2 *Kent*, 458.

If this be so, how can the appellee, especially in our Courts and in the State where he lives, and where the property is situate, undertake to appropriate it to his use, as a creditor of Nicholas Leister. Property to the sole and separate use of the wife is recognized wherever the English law prevails, to be free and disencumbered from any right of the husband or of his creditors, and in whatever condition it may be found. The attaching creditor here is the moving party, he must show credits in the hand of the garnishee, belonging to Nicholas Leister, and no other person. He is restricted to this; if funds should be found in his hands, in any other capacity or for any other use than that of his own absolute right and property, they are not liable to be appropriated by his creditors. The wife is not the moving party; she is not a party to the record, it is not proper that she should be, her legal standing in the Court as a party pressing her rights, is not in issue and cannot therefore involve any question as to her legal operative rights, but the action is against her husband and for his debt, and to *subject his property* to the *payment* of it; they must show it to be *his property* which they seek to apply. And when doing this they cannot *take hers* secured to her by the law.

Are the laws of our own State to be utterly disregarded, when both the attaching creditor and the property is within the State, and subject to the laws of the State? The law of our own State must govern. A citizen cannot disregard it and depend upon the law of any other State.

The property is here ; it is to be attached by a creditor in defiance of our law. It cannot be—our law must prevail. *Gardner vs. Lewis,* 7 *Gill,* 395 ; *Davis vs. Jacquin,* 5 *H. & J.,* 108 ; *Houston vs. Nowland,* 7 *G. & J.,* 480 ; *Dakin vs. Pomeroy & Crafts,* 9 *Gill,* 1 ; *Casilly and Wife et al., vs. Meyer et al.,* 4 *Md. Rep.,* 1 ; *Haney vs. Marshall,* 9 *Md. Rep.,* 194 ; *Wilson & Co. vs. Carson & Co., Garn. of Webb, Maxcy & Co.,* 12 *Md. Rep.,* 75 ; *Trasher vs. Everhart,* 3 *G. & J.,* 242.

The Act of 1853 is explicit ; it says, the property real and personal, belonging to a woman at the time of her marriage, &c., shall be protected from the debts of the husband, and not in *any way liable* for the payment *thereof.* Is this law to be observed in Maryland ? The property is here. The law does not say where the woman may reside. It is the property within our jurisdiction that is exempt. It is not a question of the residence of a married woman ; a wife is obliged to go with her husband ; the husband's residence is her residence. And thus owning property in Maryland, and under the law protected, she is obliged to reside with her husband ; she leaves possibly her property behind with a view to its protection, and yet by the position assumed by the appellee, the moment she leaves, the protection to her property is gone. This cannot be—the property is here. The process of our Court must be used to get it as in this case—and by the forms of our laws they must abide. They ask for the law to get it, and the law says it cannot be got, for by the law there is no right or power to get it. The law says *it is not liable* and no legal process can reach it. So that in all aspects of this cause, we conceive there is error in the judgment below. *Flowers vs. Foreman,* 23 *How.,* 133 ; *Newell vs. Hayden,* 8 *Clarke, (Iowa,)* 143 ; *Runyon vs. Groshon,* 1 *Beasley, (N. J.,)* 86 ; *Townes vs. Durbin,* 3 *Met., (Ky.,)* 352.

*R. H. Alvey,* for the appellee.

The equity proceedings, set out in the record, were taken simply and exclusively for the purpose of partition, and not for the purpose of having trusts or uses declared in regard to the proceeds of the sale of the real estate devised by Mrs. Gehr ; and though the Court did, by its decree of sale, notwithstanding there was no separate use provided for in the devise, declare that Mrs. Leister's proportion of the proceeds of sale should be distributed to her separate use ; yet this declaration of use is by no means binding upon the plaintiff in this cause, *who was in no manner a party to the proceedings;* and therefore, being an admitted creditor of the husband of Mrs. Leister, is entitled to assert his claim as if no declaration of separate use had been made. *Brooks vs. Brooks et al.,* 12 *Gill & John.,* 306 ; *Amer. Exch. Bank vs. Inloes, Garnishee,* 7 *Md. Rep.,* 380 ; *Keighler et al. vs. Ward et al.,* 8 *Md. Rep.,* 254 ; *McClellan vs. Kennedy,* 3 *Md. Ch. Dec.,* 234.

The conversion of the realty into personalty was complete from the time of the final ratification of the sale, and the compliance with the terms thereof by the purchaser ; and for the distributive proportion of the wife, the husband, *at common law,* could maintain an action, either in his own name or in the joint names of himself and wife ; and therefore, the interest thus accruing, being but a chose in action, in right of the wife, was liable to be attached at the suit of a creditor of the husband. *The State vs. Krebs et al.,* 6 *Har. & John.,* 31 ; *Leadenham vs. Nicholson,* 1 *H. & G.,* 267 ; *Hammond et al. vs. Stier,* 2 *Gill & John.,* 81 ; *Peacock vs. Pembroke and Clarke,* 4 *Md. Rep.,* 280.

And the Acts of Assembly of this State, in regard to the rights of married women, constitute no defence to the right of the appellee to have the fund condemned for the payment of his debt; for they were not intended for the benefit or protection of persons of other States, and they

can have no extra-territorial operation whatever ; and the principle is well established, that personal property has no locality ; and that it is not correct to say that the law of this State gives way to the law of another State or country ; but that it is a part of the law of this State that personal property is to be governed by the law of the domicil of its owner. That the property in question having been acquired since the parties have been domiciled in the State of Illinois, the laws of that State govern as to all the rights and liabilities appertaining thereto, notwithstanding the property may be found here ; and the law of this State can only be appealed to in order to determine whether such property be movable or immovable. *Newcomer vs. Orem,* 2 *Md. Rep.,* 297 ; *Story's Conft. of Laws, sec.* 187; *Hooper vs. Mayor & C. C. of Balto.* 12 *Md. Rep.,* 464.

And as it is clearly established in this case, that the common law of England prevails in the State of the domicil of the husband and wife, and is there made by statute the rule of decision in regard to their rights; and that by the rules and principles of that law, the fund attached here is vested in the husband, and would, upon being transmitted to Illinois, where it was about to be sent at the time it was attached, *be at once rendered liable to the debts of the husband,* notwithstanding the claim of the wife ; policy, as well as the settled rules of law, require that the Courts should apply the same principles here, and allow our own citizens to obtain payment of their debts, without being subjected to the trouble and expense of pursuing the property into the State of Illinois. *Sawer vs. Shute,* 1 *Anstr.,* 63 ; *Campbell vs. French,* 3 *Ves.,* 321 ; *Dues vs. Smith, Jacob,* 544 ; *Corrie's case,* 2 *Bland,* 499, 500 ; *Newcomer vs. Orem,* 2 *Md. Rep.,* 305, 306, 307.

It was properly for the Court to decide upon the construction of the statute law of Illinois, and as to what the

common law of England is, and its effect, and to instruct the jury accordingly, leaving them to find simply the *factum* of the law. *Cecil Bank vs. Barry*, 20 *Md. Rep.*, 287.

But if the construction and effect of the law had been submitted to the jury, this would be no ground of reversal, if this Court, upon examination, should come to the same conclusion as that arrived at by the jury. *Hanson vs. Campbell's Lessee*, 20 *Md. Rep.*, 223 ; *Warner vs. Miltenberger's Lessee*, 21 *Md. Rep.*, 264.

There can be no question but that the husband has the *legal* title to the fund in controversy, and this case being a proceeding *at law*, the separate use declared by the Court of Equity cannot be recognized, or made effective as a defence against the judgment sought; for any attempt to give effect to such merely *equitable rights*, in a proceeding at law, through the instrumentality of a jury, would certainly lead to confusion and uncertainty in the administration of the jurisprudence of the State. *Bridges and Woods vs. McKenna*, 14 *Md. Rep.*, 258 ; *Watkins vs. Holman et al.*, 16 *Pet.*, 26 ; *Faulkner vs. Faulkner's Ex'rs*, 3 *Leigh*, 255.

And in the case of *McLaughlin vs. Swann*, 18 *How.*, 217, the Supreme Court of the United States have expressly decided, *in reference to our own attachment laws*, that none but legal defences can be made by the garnishee. See, also, *Pennell vs. Grubb*, 13 *Penn. R.*, 552 ; *Taylor vs. Gardner*, 2 *Wash. C. C. Rep.*, 488 ; *Loftin vs. Shackelford*, 17 *Ala.*, 455.

But the fund in question having been paid over by the trustee, and entirely withdrawn from the possession and control of the Court declaring the use, and having passed into the hands of a third party to be transmitted to the wife in the State of Illinois, the common law rights of the husband attached, and it at once became liable to his debts. *Carne vs. Brice*, 7 *M. & W.*, 183 ; *Commonwealth vs. Manley*, 12 *Pick.*, 173.

28                    v. 27

If the foregoing propositions are correct, then, of course, none of the appellant's prayers are sustainable; and there was no error in rejecting them. All the prayers of the appellant however, except the sixth, are vicious, because they submit questions of law, exclusively for the determination of the Court, to the jury; and it is well settled that a judgment will not be *reversed* on account of the refusal by the Court below to grant a prayer which submits a question of law to the jury. *Cecil Bank vs. Barry, Garnishee of Herr*, 20 *Md. Rep.*, 297.

And the Act of 1862, ch. 154, does not change this rule; for while, under that act, the Court would not *reverse* a judgment, because of the *granting* of a prayer submitting a question of law to the jury, it does not follow, (indeed the reason of the thing forbids it,) that the Court would reverse because of the *refusal to grant an erroneous prayer*, the effect of which is to transfer the functions of the judge to the jury; the object of the act being to prevent reversals upon grounds not taken in the Court below. And in order to raise a question of the appellee's right to recover on the sixth prayer of the appellant, the truth of all the evidence given on the part of the appellee, and all that on the part of the appellant that is in favor of the appellee, as also all facts reasonably deducible therefrom, are to be taken as conceded, as this prayer is in the nature of a demurrer to the whole evidence. *McElderry vs. Flannagan*, 1 *Har. & Gill*, 308, 320; *Franklin & Armfield vs. Long*, 7 *Gill & John.*, 407.

CRAIN, J., delivered the opinion of this Court.

The attachment in this case was issued by the appellee to affect the proceeds of sale of the real estate of the wife, to pay the debt of the husband. The facts as presented in the record are, that Nicholas Leister and wife were citizens of this State until August, 1854, when they removed to Illinois, where they resided when this attachment

issued. Before removing from the State Leister became indebted to the appellee, who has always resided in Washington county, Maryland. The fund in controversy was derived from the sale of the real estate of Mary Gehr, the mother of Sarah Leister, the wife of Nicholas.

Mary Gehr died in 1855, leaving real estate in Washington county, and by her last will and testament devised a child's share of said estate to Sarah, the wife of Nicholas. In January, 1856, a bill was filed in the Circuit Court for Washington County against Leister and wife and the other devisees, for the sale of the real estate for partition. The bill was answered by Leister and wife. In their answer Sarah, the wife of Nicholas, claimed her portion of the estate as her sole and separate estate, free from the debts of her husband, and insisted that the same should not be divested from her by a sale thereof. Nicholas, the husband, disclaimed all right, title or interest at law or in equity to any portion of the estate of Mary Gehr, by virtue of his marriage with the said Sarah or otherwise. A decree was passed in the cause on the 12th of August, 1856, for the sale of the property, and in the decree it was provided that the proportion of the proceeds of the sale of the property, allotted to Sarah, should be deemed her separate estate, for her sole and separate use and benefit, free from any claim or control of her husband or his creditors. After the sale of the property the amount of the proceeds due Sarah was credited to her sole and separate use, and paid over to the appellant as her attorney, when it was attached by the appellee to pay the debt of her husband.

At the trial of the cause two bills of exception were taken by the appellant; the first to the admissibility of evidence, and the second upon the granting of the plaintiff's and the rejection of the defendant's prayers. To arrive at a proper solution of the questions to be determined by this appeal, we must ascertain the rights of

Sarah, the wife, under the will of her mother and the proceedings and decree of the Court, and whether the proceeds of the estate audited to her and received by Mr. Smith, as her attorney, were liable to be attached in our Courts for the payment of the husband's debt. In 1841, the legislature recognizing the just and equitable right of the wife to the enjoyment of her real estate, passed a law to protect the real estate of the wife from the debts of the husband. This legislation in favor of the wife against the creditors of the husband so favorably impressed itself upon the public mind, that by the 38th Section of the 3d Article of the Constitution of 1851, the legislature was required to pass laws necessary to protect the property of the wife from the debts of the husband during her life, and for securing the same to. her issue after her death. The legislature acknowledging the wisdom of this provision in obedience to the mandate of the Constitution, enacted the law of 1853, Chapter 245. That act provides that *all* the property of the wife acquired or received, after her marriage, by purchase, gift, grant, devise, bequest, or in a course of distribution, shall be protected from the debts of the husband, and not in any way be liable for the payment thereof. And to effect the objects of the law, the wife was given the benefit of all such remedies for her relief and security as then existed, or should be devised in the Courts of law or equity, without the necessity of the interposition of a trustee. The object contemplated by this law is too clear for doubt; by its enactment the legislature intended to give full protection and security to the property of the wife against the creditors of the husband, as previous to its enactment the cases of *Peacock vs. Pembroke and Clarke,* 4 *Md. Rep.,* 280, *and Turton's Ex'rs vs. Turton,* 6 *Md. Rep.,* 375, had been decided by this Court, and in each case the property was adjudged to be the husband's and subject to the payment of his debts. This act, soon after its passage, received a judicial inter-

pretation in the case of *Unger & Wife vs. Price,* 9 *Md. Rep.,* 552. In that case, Mrs. Unger had sold her potential right of dower, and invested the money in personal property, and it was held by this Court to be exempted from the debts of the husband. The case of Mrs. Leister is equally strong, and comes within the principle settled in *Unger and Wife vs. Price.* She was the devisee of real estate, and with the consent of her husband the proceeds of sale of the property under the decree of a Court of Equity were held to her sole and separate use, so audited to her and paid over to the appellant. But the appellee insists, that the proceedings and decree were not admissible evidence against him, because they were *res inter alios acta.* We admit, as a general rule, that judgments and decrees are evidence binding only between parties and privies. But there are many exceptions to this rule, and we are of opinion that this case forms one of the exceptions and comes within the principle settled by this Court in the case of *Key vs. Dent,* 14 *Md. Rep.,* 98. The record was introduced in this case to show how the fund was derived, and that the conversion from realty into personalty was not to prejudice the rights of the wife. For that purpose, according to the decision in *Key vs. Dent* and the authorities relied on by Justice Eccleston, who delivered the opinion of the Court, the record was evidence. *Head's Rep's. vs. McDonald,* 7 *Monroe,* 207 ; 4 *Phillips on Evidence,* 920, 921, 977, *(Ed. of* 1843.) The record was confirmatory of the answers of the garnishee and proof that the decree was had as there set forth. It was a decree of a Court of competent jurisdiction, which in the exercise of its powers as a Court of Chancery settled the property to the sole and separate use of Mrs. Leister. And although we find this right of the wife to her property, protected in this State by public policy, by statute and by a decree of a Court of Equity, yet it was earnestly contended by the learned counsel for the appellee, that a creditor of the

husband had a right to attach this fund in our Courts of justice for the debt of the husband, as by the laws of Illinois, where the husband and wife resided, the husband was entitled to all the personal property of the wife, and that by virtue of this law of the domicil the fund was vested in the husband. And he claimed this right to divest the wife of her property by the law of the domicil, on the ground of comity. In this case we cannot sanction such a right, for it has been decided that comity is overruled by positive law, and that it is only in the silence of any particular rule, affirming, denying or restraining the operation of foreign laws, that Courts of justice presume a tacit adoption of them by their own government. *Gardner vs. Lewis,* 7 *Gill,* 395. It is certainly competent for any State to adopt laws to protect its own property as well as to regulate it, and "no State will suffer the laws of another to interfere with her own, and in the conflict of laws, when it must often be a matter of doubt, which shall prevail, the Court which decides, will prefer the laws of its own country to that of the stranger." *Story's Conflict of Laws, section* 28. The Courts of our State have perfect jurisdiction over all personal property as well as real within its limits, belonging to the wife, and they have a right to protect both from the debts of the husband. If therefore our legislative enactment in regard to the property of the wife and the laws of Illinois conflict, it cannot be made a question in our own Courts which shall prevail. " Where there is no constitutional barrier, we are bound to observe and enforce the statutory provisions of our own State." *Davis vs. Jacquin,* 5 *Harris & Johnson,* 109 ; *Gardner vs. Lewis,* 7 *Gill,* 395.

As this fund by our laws is held by the appellant for the sole and separate use of Mrs. Leister, a creditor of the husband seeking a remedy against him in our Courts must be governed and regulated by our laws ; for Justice Story says " a person suing in this country must take the law as

Smith, Garnishee of Leister, *vs.* McAtee.

he finds it, and wherever a remedy is sought, it must be administered according to the *lex fori;* and such a judgment is to be given, as the law of the State where the suit is brought, authorizes." *Story's Conflict of Laws,* secs. 571, 572. And in this Court in the case of *Wilson & Co. vs. Carson & Co.,* 12 *Md. Rep.,* 75, Le Grand, Chief Justice, says, "The recognition of the laws of another State, in the administration of justice in this, is not a right *stricti juris;* it depends entirely on comity, and in extending it, Courts are always careful to see that the statutes of their own State are not infringed to the injury of their own citizens."

We think these authorities decisive of the question, and that the appellant has a right to rely in a Court of law upon the title of Mrs. Leister to the fund in controversy. Her right had not been divested by her own act or by operation of law, and the fund in his hands was not liable to be attached by the creditor of the husband.

The views which we have expressed of the legal propositions governing this case are conclusive upon the right of the plaintiff to recover, and it is unnecessary to examine the first bill of exceptions, to ascertain whether the evidence offered by the defendant of the laws of Illinois touching the rights of husband and wife were admissible or not. It follows from what we have said, that the instructions given by the Court at the instance of the plaintiff and contained in the second bill of exceptions were erroneous. The prayers asked by the defendant's counsel embrace in our opinion the true theory of the law of the case and ought to have been granted. For these reasons we reverse the judgment of the Circuit Court.

*Judgment reversed*
*without procedendo.*

(Decided 15th July, 1867.)