ELSIE MAY BAKER ET AL., EXECUTORS, *v.* DELLA A.
COOPER.

[No. 75, October Term, 1933.]

*Decided January 12th, 1934.*

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN,

*F. W. C. Webb, Carroll E. Bounds, William W. Travers,* and *Woodcock & Webb,* for the appellants.

*James M. Tunnell* and *Wailes & Robins,* for the appellee.

PARKE, J., delivered the opinion of the Court.

James Carey, late of Wicomico County, died intestate, and letters of administration upon his estate were granted by the Orphans' Court of Wicomico County on July 20th, 1925, to his daughter, Mánie H. Baker, and William Howard Wells, whose first and final administration account was stated, and approved by that orphans' court on July 25th, 1926. The daughter was the sole next of kin, and the entire estate for distribution, amounting to $5,030.98, was accordingly distributed by this account to her. The daughter received her distributive share, and, on February 2nd, 1926, executed a release therefor to the administrators. As a part of this distribution, the sole next of kin had assigned to her a mortgage debt of $2,000, and a mortgage deed conveying to the intestate, before his death, land in Wicomico County to secure its payment. This mortgage indebtedness is unpaid, and on May 12th, 1928, the note and mortgage deed were both held by the distributee. On this last-named date a cer-

4

tain Della A. Cooper began on the equity side of the Circuit Court for Wicomico Court a suit against the distributee, wherein the recited facts were stated and also these other allegations.

It was averred that at the time of his death the intestate was indebted to the plaintiff for services rendered by her to him in his lifetime, and that, after his death and before the final settlement of his estate in the Orphans' Court of Wicomico County, the complainant made known her claim against his estate to his administrators, but they refused to pay it, whereupon she brought suit against the administrators of his estate in Sussex County, in the State of Delaware, where ancillary letters of administration upon the estate of the intestate had been granted to the said Manie H. Baker and William Howard Wells; and, on April 27th, 1927, the plaintiff recovered a judgment for the sum of $2,800, with interest from date, and $226.91 costs. It is further alleged that this judgment was not recovered in time to enable the plaintiff to file it against the estate in the Orphans' Court of Wicomico County, and that the judgment remains unpaid, with the exception of a credit of $1,298.26, paid, on January 6th, 1928, as the proceeds of an execution issued on said judgment and levied upon certain land of the intestate in Sussex County of which he had died seised and possessed. An exemplified copy of the record of the action was filed as an exhibit to the bill of complaint, and it shows that the action was begun on June 17th, 1926, and that on the same day the administrators accepted service. The defendants pleaded *non assumpsit,* release, accord and satisfaction, setoff, and statute of limitations. After replication, there was a joinder of issues, and on April 13th, 1927, a verdict was rendered by the jury for the plaintiff in the sum of $4,000. The defendants filed a motion for a new trial, and on April 27th, the court ruled that a new trial should be granted on the ground of excessive damages, unless the said plaintiff would agree to a reduction of the verdict to $2,800. The plaintiff so agreed, and the court thereupon refused the

motion for a new trial, and judgment was entered in the sum of $2,800, with interest from April 27th, 1927.

Upon these facts, the plaintiff in her bill of complaint stated that she was advised that she was entitled to have the residue of her judgment paid by the distributee out of the distributive share she received as the next of kin of the intestate, and that, while she was unable to determine what use the distributee had made of her portion of the estate, the plaintiff was advised that the distributee had in her possession the unpaid mortgage of $2,000, and that she was entitled to have the residue of the judgment paid out of the amount due the distributee on account of said mortgage debt and from any other assets she had received. On the theory of the inadequacy of a remedy at law, the plaintiff prayed that the distributee might be decreed to be holding in trust for the use of the plaintiff sufficient of the assets received by her as next of kin to pay the sum remaining due on account of said judgment, and that out of such assets the distributee be required to pay the amount remaining due on said judgment. The writ of injunction was prayed to restrain any disposition of the assets in the hands of the distributee during the pendency of the litigation, and there was a prayer for general relief. The plaintiff was laid under a rule security for costs because she was a resident of Sussex County, Delaware, and a demurrer was filed to this bill of complaint, and sustained, with leave to the complainant to file an amended bill of complaint. The plaintiff availed herself of the court's permission, and filed an amended bill of complaint.

The amended bill repeats the allegations of the original bill in its precise terms, except in these few particulars. The language of the original bill that the intestate "was indebted unto your complainant for services rendered him by your complainant during his life time" is amplified in the amended bill by the insertion of the amount of the alleged indebtedness, so that the allegation is "was indebted unto your complainant in the sum of six thousand

dollars for services rendered," and then proceeds in the words of the original bill, except that, instead of the pleader relying on the exemplification of the record of the cause in which the judgment in Sussex County was obtained to show that the jury had rendered a verdict in this action for $4,000, which had been reduced to $2,800 and the final judgment then so entered, the pleader has incorporated these facts in the body of the amended bill of complaint; and thereafter, whenever the judgment was mentioned in the original bill as fixing the amount of the obligation of the estate, the amended bill by substituting the term "indebtedness" makes it clear that the claim the plaintiff is seeking to enforce is whatever may remain due on account of an original purporting indebtedness of $6,000, on which a judgment was recovered for $2,800, subject to a payment of $1,298.26, procured by an execution issued on said judgment under which certain land of the intestate in Sussex County was sold.

By reason of the death of the defendant Manie H. Baker, testate, her executors were duly made parties defendant, and the substituted defendants excepted to the amended bill, and moved that it be stricken from the files of the court on the ground that it was not a proper amendment because, it was contended, the amended bill set forth new matters which required the filing of an original bill of complaint. The chancellor overruled the motion, and the defendants did not answer but demurred. The court overruled the demurrer, and the defendants, declining to answer, entered an appeal.

1. The first question, accordingly, is, Was there an abuse of discretion in permitting the amended bill to retain its position on the files of court. The contention of the defendants that the amendments made a new bill cannot be entertained. The statute and the equity rule give the plaintiff or the defendant the right to amend "so as to bring the merits of the case in controversy fairly to trial." Code, art. 16, sec. 17; Rule 17 of the General Equity Rules. Here the amendments supply the amount of the claim on which suit was brought, and of the verdict of the jury, and the reduction of the

amount of the verdict to the sum for which judgment was entered. The only fact not found in the allegations in the body of the original bill or in its exhibit is the amount of the original claim. The original bill, however, proceeded upon the theory that the claim as presented to the administrators had, as a result of a trial on the merits, been reduced to the amount of the judgment, which therefore should be the basis of the recovery against the sole distributee. The amended bill is bottomed upon the same alleged indebtedness of the intestate for the services rendered him by the plaintiff as in the first bill, which is the substance of the case, but differs in stating the claim in its original amount, together with the result of the litigation and the credit for the sum realized on the judgment obtained, as were stated in the original bill, and in leaving the amount of the plaintiff's recovery to be considered and ascertained in connection with these and the other facts alleged in the bill of complaint. The effect of the amendment is simply to supply the omission of consistent facts connected with the substance of the case, but not forming the substance itself. *Miller's Equity,* secs. 185, 186. So, in refusing the motion to strike the amended bill from the files, the chancellor committed no abuse of discretion.

2. If a person die intestate leaving property in several different jurisdictions, the legal representative of the dead person in each of such jurisdictions derives his authority from the sovereignty which had jurisdiction over the property so left in that jurisdiction. The administration in one state is therefore independent of that in any other, and, because of the origin of their power and their authority over different property, there is no privity between administrators in different states. On this ground it is held by the great weight of authority that a judgment obtained against an administrator of one state, although after a trial on the merits, furnishes no cause of action against an administrator of another state, so as to affect assets under the control of the other, even if the administrator be the same individual administering in both states. Justice Story in his work on

the *Conflict of Laws* expresses a doubt as to the applicability of the rule when the same person is the administrator in both states; section 522, citing *Brodie, Admr. of Lightfoot v. Bickley,* 2 Rawle (Pa.) 431. In *Lomas v. Hilliard,* 60 N. H. 148, Justice Story's doubt is vigorously and clearly expounded in these terms: "He is, to be sure, the administrator and representative in Vermont by virtue of Vermont law, and in New Hampshire by virtue of New Hampshire law; but that distinction does not annihilate his identity. He is the same person in one state as in the other, and represents the same interests. He exercises his own individual judgment in both states in behalf of the same estate, and to say that an adjudication of a matter concerning the estate in one state, to which he was properly a party, would not be binding on the parties in another state, because he happened to derive his representative character in both states from different sources, is, it seems to us, a technical refinement not often found in modern legal reasoning. It is not suggested that the assets of the estate would be any differently affected in one jurisdiction than in the other, although the proceedings in each state are had primarily with reference to the assets in that state; nor is it apparent how the same administrator could do any more or any less in his defence against the claim in this suit in one state than in the other." See, also, *Creighton v. Murphy,* 8 Neb. 349, 1 N. W. 138; *Dow v. Lillie,* 26 N. D. 514, 144 N. W. 1082.

The decided preponderance of authority is, however, to the contrary, and the rule stated applies, notwithstanding the same person is the administrator in both the domiciliary and ancillary administrations. Although identical in person, that person has received his authority from two distinct sovereignties, and has received different property for which he is separately accountable according to the tenor of his several appointments. His dual capacities are as distinct as if they had been conferred on different persons, and must be so regarded, unless the enforcement of the rule is to depend upon whether or not there is identity or difference in the appointee of each sovereignty. *Johnson v. Powers,* 139 U. S.

156, 11 S. Ct. 525, 35 L. Ed. 112; *Johnston v. McKinnon,* 129 Ala. 223, 29 So. 696; *Strauss v. Phillips,* 189 Ill. 21, 59 N. E. 560; *State v. Fulton* (Tenn. Ch. App), 49 S. W. 297; *Nash v. Benari,* 117 Me. 491, 105 A. 107; and see valuable notes in 3 *A. L. R.,* pages 64-71, and in 27 *L. R. A.,* pages 101-117; 1 *Woerner, Administration* (3rd Ed.), sec. 158.

The cause at bar, however, is not a suit against a domiciliary administrator, but is against a distributee of an intestate's estate under an account stated by the domiciliary administrators. The theory of the bill of complaint is that the personalty received by the distributee was impressed with a trust for the payment of the creditors of the intestate. The problem thus presented requires a further discussion of the cases.

In *Johnson v. Powers,* 139 U. S. 156, 11 S. Ct. 525, 35 L. Ed. 112, it was held that the allowance by commissioners appointed by a probate court in the State of Michigan, pursuant to a statute, of a claim against the estate of a deceased person, upon a hearing to which the only party is the administrator in his personal capacity as claimant and in his representative capacity as defendant, is no evidence of a debt in a suit in equity by him in New York to recover from other persons real estate of the intestate alleged to have been conveyed in fraud of the intestate's creditor. The court in that decision said: "A judgment recovered against the administrator of a deceased person in one state is no evidence of debt in a subsequent suit by the same plaintiff in another state, either against an administrator, whether the same or a different person, appointed there, or against any other person having assets of the deceased. *Aspden v. Nixon,* 4 How. 467 (11 L. Ed. 1059); *Stacy v. Thrasher,* 6 How. 44 (12 L. Ed. 337); *McLean v. Meek,* 18 How. 16 (15 L. Ed. 277); *Low v. Bartlett,* 8 Allen (Mass.), 259."

The last case cited, of *Low v. Bartlett, supra,* is the only one in which the suit was not wholly against a representative of the decedent. In that case the Massachusetts court held that a judgment adjudicating a claim against the estate of a

deceased person in Vermont was not competent evidence of debt in a suit in equity brought in Massachusetts by the same plaintiff against an executor appointed there, and against his codefendants, the legatees, and their trustees, who had received their legacies from him as executor.

Upon the principles stated in this opinion, the judgment in Vermont against the ancillary administrator there would not be competent evidence against the executor in Massachusetts, but, in order to deny relief against the legatees and their trustees who had been paid by the executor in Massachusetts, the court had to hold there was no privity between the ancillary administrator and the legatees and their trustees. The conclusion and reason of the court is stated in a few sentences:

"Nor are the legatees or trustees (for the legatees) in · privity with the administrator. They could not have intervened between him and the executor to recover from him anything that might have remained in his hands after the payment of debts in Vermont; but by the law of comity the amount would have been paid by him under an order of the probate court there to the executor, to be by him administered here. *Dawes v. Boylston,* 9 Mass. 337. The judgment in Vermont was in no sense a judgment against them, nor against the property which they had received from the executor.

"It is further contended that equity will require legatees to refund to a creditor. In *Noel v. Robinson,* 1 Vern. 94, and *Hodges v. Waddington,* 2 Vent. 360, this doctrine is stated. But where the liability of legatees is regulated and limited by statute, as it is in this commonwealth, equity will not set aside the statute, but will be governed by it."

The rights of a creditor are contractual, but a legatee's are those of a beneficiary of the testator's bounty. So, before the legacy may be received when the privity with the executor ends, and be retained, the creditors must be paid. In one sense, the judgment in Vermont was not a judgment against the legatees, nor against the property which they had received from the executor, since the legatees were not bound to pay

the judgment, and the property they received was in excess of the debts paid by the executor, but, in a truer, because a more accurate and substantial, sense, the judgment in Vermont was an adverse judgment against the legatees, as the payment of debts in Vermont by the ancillary administrator diminished the assets of the testator's estate, and so affected the capacity of the estate to pay the legatees. What the legatees took under the will, therefore, depended upon there being a residue of the personal estate after the payment of the debts. It is this subordination of legacy to testator's debt, no matter what representative may have the title and possession of the personalty, that, along with the title being in the representative, determines the relation of the legatee to the personal representative; and so the ability or inability of the estate to satisfy the legacy is not the test.

Accordingly, the legatee was represented by the ancillary administrator as a party defendant to the suit in Vermont. Although the control of the defense in that litigation was with the ancillary administrator, it was in a representative capacity and for the benefit of all parties in interest, and whatever judgment was rendered was not primarily a personal one, but against the ancillary administrator in his representative capacity. All of the personalty in Vermont was dedicated to the payment of the debts in that state in full, or proportionately, if the aggregate personal estate in the hands of both the ancillary and domiciliary representative were insufficient to pay the debts in full. *Davis v. Estey,* 8 Pick. (Mass.), 475. The tribunal having jurisdiction over the ancillary representative may retain its jurisdiction for the complete administration of this personalty in the hands of the representatives of that tribunal, as it is only upon the doctrine of comity, and not of right, that the residue remaining after the payment of debts in the jurisdiction is transmitted to the domiciliary representative. *De Sobry v. De Laistre,* 2 H. & J. 191, 224, 228-229; *Cassilly v. Meyer,* 4 Md. 1, 7-10; *Williams v. Williams,* 5 Md. 467, 470; *Wright v.*

*Gilbert,* 51 Md. 146, 155; *Dalrymple v. Gamble,* 66 Md. 298, 306, 7 A. 683, 8 A. 468; *In re Kloebe,* 28 Ch. Div. 175.

The cases here considered, and those to which the court has been referred or which it has found, do not present the question which is at bar. Here the cause is not against the personal representative of a decedent, nor against a fraudulent grantee of realty, nor against an heir or devisee, but against the sole distributee of an intestate. The inquiry is not whether the ancillary and domiciliary administrator are in privity, but whether a distributee is in privity with an ancillary administrator, under whom she might have taken if the assets in his hands had been ample, and against whom, in the course of his administration, a judgment for a debt of her intestate was recovered to bind assets in his hands as administrator. It must be manifest that the ancillary administrator does represent the legatee or distributee in the action at law, and, in the absence of fraud or collusion on the part of the representative, the legatee or distributee is concluded by the judgment rendered to the extent that it may lawfully affect the legacy or distributive share. The judgment bound the assets in the hands of the ancillary administrator to the extent of the indebtedness of the decedent to the plaintiff as found by the verdict of the jury and extended by the court. The judgment would not run against the distributee or legatee personally, and so, as to the legatee or distributee, it established the amount of the indebtedness of the decedent to the plaintiff which was not barred by the statute of limitations. In a suit in equity against a legatee or distributee to recover the amount of an unpaid debt, a judgment so rendered, whether against the ancillary or domiciliary personal representative of the deceased, must be given this effect, whether the legacy or distributive share was received from the domestic or foreign personal representative, since, on principle, no sound distinction can be made between the domiciliary and ancillary administration where the suit is one brought by the unpaid creditor, upon the equitable principle that the decedent must pay his debts before his

beneficiary may enjoy or retain his bounty, unless some paramount rule of law or principle of equity will prevent the application of this principle.

The record now before the court shows that the personal representatives in Delaware interposed pleas of *non assumpsit,* release, accord and satisfaction, set-off, and the statute of limitations, and that, after replications, issues were joined, and a trial on the merits had, which resulted in the entry of a judgment of $2,700. The principle upon which the rules of law with respect to the admissibility and effect of judgments and records is based is that there should be a limitation prescribed to litigation in the public interest, and that the same cause of action should not be brought twice to final determination. There is implicit in this rule that no one ought to be bound by proceedings to which he is a stranger, but the converse of this qualification is equally true, that every one should be bound who is not a stranger. So, under the term "parties," all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings. The judgment here was *in personam* and obtained in a foreign tribunal, and its effect, in the present cause, is that of *prima facie* evidence that the plaintiff recovered against the ancillary administrators a judgment of a certain date for the amount of the indebtedness of the intestate to the plaintiff at the time of his death, subject to impeachment for fraud or for having been pronounced by a court without competent jurisdiction over the cause. 1 *Greenleaf on Evidence* (16th Ed.), secs. 523, 527, 546-548; *Key v. Dent,* 14 Md. 86, 97, 98; *Keene & Brady v. Van Reuth,* 48 Md. 184, 196; *Bank of Commerce v. Dalrymple,* 16 Md. 17, 32, 34; *Smith v. McAlee,* 27 Md. 420, 437; *Crisfield v. Storr,* 36 Md. 129, 153; *Parr & Cockey v. State,* 71 Md. 220, 234-236, 17 A. 1020; *Balto. & O. R. Co. v. Howard County,* 111 Md. 176, 186, 188, 73 A. 656; *Hill v. Tucker,* 13 How. 458, 467, 468, 14 L. Ed. 223, 226, 227; *Carpenter v. Strange,* 141 U. S. 87, 11 S. Ct. 960, 35 L. Ed. 641, 646, 647.

3. The personal assets of a testator or intestate are impressed with a trust to pay the debts of the decedent, which an unpaid creditor has a right to have administered for his benefit. It is upon the ground of such a trust that the jurisdiction of a court of equity primarily rests in the administration of the estate, and in bills brought against executors, administrators, or, after delivery or payment, against legatees or distributees, for the purpose of charging them with a liability to have applied the personal assets of the decedent received to the payment of his debts. *Zollickoffer v. Seth,* 44 Md. 359, 373-375, 379; 2 *Williams on Executors,* pp. 797-800 (1314 star); *Hodges v. Waddington,* 2 Ventr. 360; *Borer v. Chapman,* 119 U. S. 587, 7 S. Ct. 342, 30 L. Ed. 532, 537; *Van Bibber v. Reese,* 71 Md. 608, 618, 18 A. 892; *Alexander v. Leakin,* 72 Md. 199, 204, 19 A. 532; *Colonial Trust Co. v. Fidelity & Dep. Co.,* 144 Md. 117, 127-128, 123 A. 187; *Von Lingen v. Field,* 154 Md. 638, 647, 648, 141 A. 390, 927.

If the decedent's funds are not sufficient to pay the debts, the right is clear that an unsatisfied creditor or claimant can compel a legatee or distributee to refund, whether the legacy or distributive share was paid to him voluntarily or by compulsion, and although the assets were delivered to the legatee or distributee by the personal representative in ignorance of the creditor's or claimant's demand. The right may, however, be lost by force of statute, laches, or such a course of dealing as would render the assertion of such right unequitable. 2 *Williams on Executors,* p. 797 (1314 star).

The bill of complaint was filed in this case within three years after the administrators had refused to pay the plaintiff's claim, and the mere inaction of the claimant or creditor within the time limited by the statute of limitations does not defeat a creditor or claimant of the right of requiring payment. *In re Baker,* 29 Ch. Div. 230. The plaintiff did not acquiesce in the refusal of the administrators to pay, because she brought suit on June 17th, 1926, on her claim against the administrators in Delaware, where she lived, and where

ancillary letters of administration had been granted to the administrators in Maryland. On the same day the suit was begun, the ancillary administrators appeared and accepted service of the summons. The sole distributee was one of the two ancillary and domiciliary administrators, and, with knowledge of the plaintiff's claim and suit, and while denying and contesting it in the action in Delaware, she stated in Maryland on January 22, 1926, an *ex parte* account, which purported to be a first and final administration and distribution account, whereby the sole distributee received into her possession all of the residue of the personal estate. The plaintiff does not appear to have done anything unequitable in the prosecution of her demand, whereby she wrought some material change in the situation so as to cause prejudice to the distributee. *Phelps, Juridical Equity,* sec. 266; *Sheeler v. Holt,* 161 Md. 366, 371, 157 A. 195; *Finance Co. v. Myerly,* 161 Md. 23, 27, 28, 155 A. 148; *Borer v. Chapman,* 119 U. S. 587, 7 S. Ct. 342, 30 L. Ed. 532, 538.

The defendant relies upon sections 109 and 110 of article 93 of the Code as a complete bar to the plaintiff's suit. In the appeal of *Zollickoffer, Excr., v. Seth, Admr.* (1875), 44 Md. 359, it was determined that, while sections 111 and 123 (then sections 109 and 119) provide for the exoneration of the personal representative upon his observing certain precautions, these sections did not exonerate and discharge the estate of the decedent, but that by section 109 (then section 108), if a claim be exhibited against an executor or administrator, which he shall dispute or reject, he is allowed to retain assets to pay it, if it be established, and if "the creditor or claimant shall not, within nine months after such dispute or rejection, commence a suit for recovery, the creditor shall be forever barred." The court, after quoting the words of the statute, stated: "By this provision, not only is the executor exonerated, but he is required to pay out or distribute the money retained, and the creditor is forever barred all right of recovery against the assets of the estate, no mat-

16

ter in whose hands they are found." See *Coburn v. Harris* (1881), 58 Md. 87, 104.

In the case of *Coburn v. Harris* (1879), 53 Md. 367, it was held that, to afford an executor or administrator the right to interpose a plea under section 109 (108), it was necessary that the claim exhibited and disputed and rejected by him must appear to have been authenticated in the manner required by law; that is, by the oath of the plaintiff or by passage for payment by the orphans' court. Page 372. There is nothing in the record to indicate that the claim was so authenticated when it was rejected and disputed on presentation to the domiciliary administrators. The law, however, was changed by chapter 674 of the Acts of 1920, now section 110 of article 93 of the Code, so that, "if a claim shall be asserted against or exhibited to an administrator or executor in any form, whether sworn to or passed by the Orphans' Court or not, and he shall refuse payment thereof in writing, such claim shall be forever barred unless the creditor shall bring suit upon the same within nine months after such rejection." It will be observed that this section depends for its operation upon the condition precedent that the domiciliary personal representative shall refuse payment thereof in writing. It is obvious that this requirement of a refusal in writing is to assure a more certain and satisfactory evidence than would be afforded by an oral declination. *Bogart v. Willis,* 158 Md. 393, 406, 148 A. 585; *Marden v. Scott,* 154 Md. 429, 141 A. 353; *Maryland Casualty Co. v. State,* 137 Md. 144, 154, 111 A. 825. Again this defense is not available to the distributee, as the conditions for its successful interposition are not found in any of the averments of the bill of complaint.

It will be unnecessary to extend this opinion by the discussion of other points made on brief, as they do not affect the conclusion that the rulings of the lower court in refusing to strike the amended bill from the files and in overruling the demurrer to the amended bill are sound.

*Orders affirmed, with costs to the appellee.*