## BORER v. CHAPMAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Argued December 13, 14, 1886.—Decided January 10, 1887.

A, a citizen of New Jersey, recovered judgment in a civil action on a contract against B, a citizen of Minnesota, whose property and estate were situated, principally, in California. B died leaving a will by which he devised real estate and bequeathed legacies to various persons in Minne-

sota. The will was admitted to probate in Minnesota, and letters testamentary thereon were issued to C and D. Ancillary proof of it was then made in California, and letters testamentary thereon were issued to D, who administered the estate in California in accordance with the laws of that state, and distributed it according to the will, and rendered a final account to the probate court in California, and was discharged by that court. A did not present his claim for payment in California, and has never been paid. He brought suit on it in Minnesota against C as executor. C appeared and, among other defences, denied that he was or ever had been executor. The court found that C had accepted the trust, and entered judgment for A, on which judgment execution was awarded *de bonis propriis*. C brought the judgment to this court by writ of error, and died while it was pending here. His executor appeared, and on his motion the judgment was reversed as erroneous in form, *Smith v. Chapman*, 93 U. S. 41, and, the cause being remanded, the court on the previous finding entered judgment for A, *nunc pro tunc*, as of the date of the first judgment. A, within twelve months from the date when the last judgment *nunc pro tunc* was ordered, commenced suit in Minnesota to recover the amount of his judgment the statute of that state giving to the unpaid creditors of a testator a right of action against legatees, provided the action is allowed within one year from the time when the claim is established; and courts of Minnesota having settled that the claim must first be established by judicial proceedings, and that the suit against the legatees must be brought within one year from the date of such establishment. *Held:*

(1) That the former judgment in this court concluded the executor of C in this suit from contending that C had not accepted the trust as executor.

(2) That A was not barred by the proceedings and decrees in California from the prosecution of the suit.

(3) That he had the right to follow into the hands of their holders in Minnesota the assets of B which had been distributed by order of the probate court in California.

(4) That there was nothing to interfere with that right, in the provision of the Constitution respecting the faith to be given to judgments and public acts of each state in every other state.

(5) That this action was not barred by the limitation in the Minnesota statute.

Whether an order for entry of judgment *nunc pro tunc* shall be made, is matter of discretion with the court, to be exercised as justice may require, in view of the circumstances of the particular case; and it is a proper exercise of that discretion when, by reason of the intervening death of a party, there would otherwise be a failure of justice for which the other party is not responsible.

The equity jurisdiction of this court is independent of that conferred by the states on their own courts, and can be affected only by the legislation of Congress.

Opinion of the Court.

For the purpose of a statute of limitations the date of the entry of a judgment *nunc pro tunc* is the date of the order of such entry, and not the day as of which the judgment is ordered to take effect.

This was a bill in equity filed by the defendant in error, complainant below, to enforce payment of a judgment rendered against one John Gordon in his lifetime out of assets belonging to the estate of Gordon which had come into the possession of the various defendants, either as executors or administrators, or as devisees or legatees under his will. The case is stated in the opinion of the court.

*Mr. W. P. Clough,* for appellants, cited: *In re Garraud's Estate,* 36 Cal. 277; *Reynolds* v. *Brumagim,* 54 Cal. 254; *In re Henry C. Hudson's Estate,* 63 Cal. 454.

*Mr. E. M. Wilson* and *Mr. Charles W. Hornor,* for appellee, cited: *Smith* v. *Chapman,* 93 U. S. 41; *Watkins* v. *Holman,* 16 Pet. 25; *Montgomery* v. *Sawyer,* 100 U. S. 571; *Mackey* v. *Coxe,* 18 How. 100, 104; *State* v. *Alverez,* 7 La. Ann. 284; *Fishmongers* v. *Robinson,* 3 C. B. 970; *Matheson* v. *Grant,* 2 How. 263, 282; *Mitchell* v. *Overman,* 103 U. S. 62; *Ex parte Morgan,* 114 U. S. 174; *May* v. *Le Claire,* 11 Wall. 217.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity filed on the 20th of August, 1879, in the Circuit Court of the United States for the District of Minnesota, by George M. Chapman, a citizen of the state of New Jersey, executor of the last will and testament of Eunice Chapman, deceased, against Felix A. Borer, administrator with the will annexed of the estate of John Gordon, deceased, Edson R. Smith, executor of the last will and testament of George D. Snow, deceased, Elizabeth Hewitt and Thomas P. Hewitt, her husband, Harriet Cecilia Snow, Sarah Ann Powell, and Georgiana Smith; the defendants being all citizens of the state of Minnesota. The object and prayer of the bill were to marshal the assets of the estate of John Gordon, deceased, alleged to have been received by the defendants either as his

representatives or legatees, for the purpose of applying them to the payment of a judgment recovered by the complainant against George D. Snow, as executor of John Gordon. The case was heard upon the pleadings and proofs, and a decree rendered in favor of the complainant below, to reverse which the defendants prosecute the present appeal.

The facts in the case on which the decree is predicated are as follows: On January 4, 1864, George M. Chapman, executor of Eunice Chapman, recovered judgment in the Supreme Court of the state of New York against John Gordon and two others in a civil action founded on contract for the sum of $4759.80, damages and costs. On May 14, 1867, Gordon, then a citizen of Minnesota, having his domicil in the county of Le Sueur in that state, made and published his last will, and within a few days thereafter died in that county. On July 1, 1867, his will was duly presented to the probate court of that county for proof and allowance by George D. Snow, and was duly admitted to probate and record, and letters testamentary in the usual form were made out and recorded, directed to Snow and Clark, his executors. By that will Gordon made numerous bequests and devises, among which was one of $30,000 in money to Harriet Cecilia Snow, wife of George D. Snow; another of $6000 in money to Sarah Ann Kniffen, now Sarah Ann Powell; another of a like amount to Georgiana Kniffen, now Georgiana Smith; three small tracts of land in Le Sueur County, Minnesota, with certain personal property then situated thereon, to Margaret Elizabeth Hewitt, and, in addition thereto, the sum of $2000 to Margaret Elizabeth Hewitt and her heirs; and the residue of the estate, after the payment of debts, funeral expenses, costs of administration, and legacies, to George D. Snow. The legatees resided in Le Sueur County, Minnesota. Gordon had previously lived in San Francisco, California, where nearly the whole of the estate was situated. The executors named in the will were George D. Snow and Pomeroy D. Clark, the latter a resident of San Francisco. In the bequests to the Misses Kniffen, and the cash portion of that to Mrs. Hewitt and her heirs, it was provided that the money should be paid into the hands of

George D. Snow, to be held and managed by him as their trustee for certain designated periods. It does not appear from the records of the probate court of Le Sueur County that either Clark or Snow ever accepted letters testamentary, or took the oath, or gave the bond required from executors by the statutes of Minnesota, or ever filed in that court any inventory of Gordon's estate, or ever did any other act in respect to the estate under such letters.

After proof of the will in Le Sueur County, Minnesota, a properly authenticated copy of the same, together with the proof and allowance thereof, was forwarded to Clark in San Francisco, who took such proceedings thereon in the probate court of San Francisco that the will was there admitted to record, and letters testamentary thereon issued to Clark solely on August 5, 1867. Snow never in any manner appeared in the California proceedings, except to receive and receipt for his legacy. Clark, as executor in California, took the usual and necessary proceedings under the laws of that state for the collection and distribution of the estate. An inventory and appraisement of the property were filed, and notice given by publication to creditors to present their claims to the executor for payment. On November 5, 1868, Clark presented to the probate court his final accounts as executor, with his petition for their allowance, the hearing of which was set for November 17, 1868, and public notice given thereof in accordance with the local law. On December 10, 1868, the probate court made its order allowing and confirming the accounts, on which date Clark filed a further petition in the probate court, praying for a decree of distribution and a final order discharging him from the office and trust of executor of Gordon's will. The court thereon made an order calling on all persons interested in the estate of John Gordon to appear before the court on January 11, 1869, to show cause why an order should not be made distributing the residue of the estate to George D. Snow, the residuary legatee. In pursuance thereof, and on the date fixed for the hearing, the court made its final decree of distribution, in which, among other things, it was ordered, adjudged, and decreed that all the acts and proceedings of the

said executor, as reported to that court and appearing upon the records thereof, should be and thereby were approved and confirmed, and that the residue of the estate should be and was thereby assigned to the said George D. Snow. On January 12, 1869, the court made its further and final order in the proceedings, discharging Clark from the executorship, the will having been fully and completely executed to the satisfaction of the court. Clark's accounts filed with the probate court show the payment of all the money legacies hereinbefore mentioned to the respective legatees prior to August 1, 1868. The residue decreed to George D. Snow, as residuary legatee, had been turned over to him by Clark prior to January 12, 1869. The indebtedness from Gordon and his associates to Chapman, arising upon the judgment in New York, has never been paid, and no claim based thereon was ever presented to Clark or to the probate judge for the city and county of San Francisco. A transcript of the judgment was procured by Chapman and forwarded to Snow in Minnesota about October 23, 1867, and, after some correspondence between them in respect to its allowance and payment, an action at law was brought thereon in the Circuit Court of the United States for the District of Minnesota by Chapman, as executor, against George D. Snow and P. D. Clark, described as the executors of the last will and testament of John Gordon, deceased. In that action process was served upon Snow, but Clark was not found. Snow appeared and defended, denying in his answer that he was or ever had been the executor of Gordon's will, and pleading that Clark, as executor in California, had fully administered the assets which had come to his hands, and had been discharged by the probate court of that state from his said office. At the June term, 1871, of the Circuit Court, the issues were found in favor of the plaintiff and against Snow, and judgment rendered thereon for the sum of $7264.25 and costs. In that action, although brought against Snow and Clark as executors in their official capacity, judgment was finally rendered against Snow personally, and execution awarded *de bonis propriis*. A writ of error from the Supreme Court of the United States to reverse that judgment was sued out, pending which, in the

year 1873, Snow died testate, leaving Edson R. Smith as the executor of his will, who was thereupon substituted as plaintiff in error in this court. At the October term, 1876, a decision was rendered in this court, reversing the judgment of the Circuit Court on the ground that it was erroneous in form, inasmuch as the action was debt on judgment recovered against the deceased testator of the defendant, and nothing was alleged in the declaration to show that the defendant had become personally liable for the judgment debt. *Smith* v. *Chapman*, 93 U. S. 41. The cause was therefore remanded to the Circuit Court, with instructions to take further proceedings therein in conformity with the opinion. The mandate of this court having been filed on June 7, 1877, in the Circuit Court, the cause came on to be heard at the December term, 1878, upon an order theretofore granted the plaintiff, George M. Chapman, executor, &c., on his petition, directed to Edson R. Smith, as executor of Snow's will, and Felix A. Borer, who had been appointed administrator *de bonis non* with will annexed of John Gordon, deceased, to show cause why the said Borer, administrator aforesaid, should not be substituted as such administrator in the place of George D. Snow, deceased, as defendant in said cause, and why judgment should not be entered in favor of the plaintiff upon the previous findings of the court in the premises; and said Felix A. Borer, administrator as aforesaid, having objected to said substitution, it was ordered by the court that he should not be required against his objection to be substituted as defendant as aforesaid, and the motion of the plaintiff for such substitution was for that reason denied. The judgment of the Circuit Court then proceeds as follows: "And it is further ordered, considered, and adjudged that judgment shall be, and the same is hereby, entered in favor of said plaintiff, George M. Chapman, executor of the last will and testament of Eunice Chapman, deceased, *nunc pro tunc*, upon the said decision and findings of the court as of the 10th day of July, A.D. 1871, against the said George D. Snow in his capacity as executor of the last will and testament of John Gordon, deceased, for the sum of $7264.25, and costs, taxed at $62.76, to be paid and enforced out of the effects of the testa-

tor, John Gordon, deceased, with interest on said sum of $7264.25 from said 10th day of July, 1871, and that said judgment be also certified by this court to the probate court of the county of Le Sueur, Minnesota, as a claim duly allowed and adjudged against the said estate of John Gordon, deceased."

Felix A. Borer had been appointed administrator *de bonis non*, with the will annexed, of John Gordon, by the probate court of Le Sueur County, on July 7, 1874, upon the petition of Chapman setting forth the recovery of his judgment in the Circuit Court of the United States, the pendency of the writ of error from the Supreme Court, and the fact that Clark had never qualified in the Minnesota proceedings, and that Snow in his lifetime had denied the acceptance of the executorship of Gordon's will. Borer has ever since remained administrator by virtue of said appointment.

Upon these facts the cause came on for final hearing in the Circuit Court, where a decree was rendered in favor of the complainant, the court being of the opinion —

"1st. That George D. Snow, appointed executor by the will of John Gordon, deceased, accepted the trust and had the will proved in Le Sueur County, Minnesota.

"2d. That this court has jurisdiction to grant the relief asked for by complainant's bill, for the reason that a court of equity can decree that a legatee under a will, after distribution, holds property in trust when valid debts of the decedent remain unpaid, and follow the property or its proceeds in the legatee's hands.

"3d. That the estate of George D. Snow is liable for the debt set up in the complaint; and if the estate of Snow is not sufficient to respond to the full amount, the deficiency can be supplied out of the estate of the residuary legatee, Mrs. Snow.

"4th. That the complainant's debt is not barred by the statute of limitations."

It was found by the decree that no assets of the estate of John Gordon had come into the hands of Felix A. Borer, as administrator; that on the 12th day of January, 1869, George D. Snow, after payment of all debts, funeral expenses, legacies,

and all claims owing or payable by the estate of John Gordon, except the claim or debt owing to Chapman, received under the will of Gordon property belonging to said Gordon of the value of $10,777.00; that by the will of George D. Snow, his wife, Harriet Cecilia Snow, was made his residuary legatee; and that the estate of Snow is solvent, and sufficient to pay all his debts and to fulfil all the provisions of the will, with an excess of assets thereon of not less than $100,000 in value, including over $20,000 in cash, for said Harriet Cecilia Snow as such residuary legatee; that she has, as such residuary legatee, received from Edson R. Smith, as executor of the will of George D. Snow, an amount more than sufficient to pay the claims of the plaintiff, with interest and costs; and that upon the death of George D. Snow, Edson R. Smith, as the executor of his will, collected and received the sum of $2824.82, being the proceeds of a claim or debt owing to the said John Gordon at the time of his death, and a part of the estate of the said John Gordon. It also appears that there are no outstanding and unpaid claims against the estate of Gordon, except that due on the judgment in favor of the complainant below.

The errors assigned by the appellants are as follows:

1st. The Circuit Court erred in holding that the said George D. Snow had ever in any manner become executor of Gordon's will, or chargeable as such.

2d. The court erred in holding that the judgment in the suit at law of Chapman against Snow, entered on December 18, 1878, *nunc pro tunc*, as of July 10, 1871, was of any force or effect whatever, as against the estate of said John Gordon, or that of the said George D. Snow.

3d. The court erred in holding that the relief prayed in the bill had not been barred by the proceedings and decrees of the probate court for the city and county of San Francisco, in the state of California.

4th. The court erred in holding that the relief prayed by the bill had not been barred by laches and the lapse of time, and the several statutes of limitations set up and referred to in the answers of the defendants to the bill of complaint.

5th. The court erred in holding and adjudging that the

estate of the said George D. Snow is liable for the claim or debt owing to the said George M. Chapman, executor.

6th. The court erred in holding that if the estate of the said George D. Snow should not be sufficient to respond to the full amount of said claim or debt, the deficiency should be paid by the said Harriet Cecilia Snow.

. The first error assigned is that the court erred in deciding that George D. Snow was chargeable as executor of Gordon's will. It is too late to raise that question in this cause. It was one of the matters in issue in the action brought by Chapman, executor, against Snow, executor, in the Circuit Court of the United States for the District of Minnesota, wherein it was expressly held and adjudged that George D. Snow was executor of John Gordon, deceased. The judgment in that case was reversed upon the application of Snow's personal representatives on the express ground that it was made payable out of the personal effects of Snow, when it ought to have been *de bonis testatoris*. That judgment concludes the question in this cause.

It is next contended, however, that that judgment is of itself void as having been rendered on the 18th of December, 1878, against Snow, as executor, who was then dead, although the entry was made to take effect as of July 10, 1871. The law on the subject of entries *nunc pro tunc* was fully considered and stated by this court in the case of *Mitchell* v. *Overman*, 103 U. S. 62, 64. It was there stated, "that, where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been for its convenience or has been caused by the multiplicity or press of business, or the intricacy of the questions involved, or for any other cause not attributable to the laches of the parties, but within the control of the court, the judgment or the decree may be entered retrospectively as of a time when it should or might have been entered up. In such cases, upon the maxim *actus curiæ neminem gravabit*, which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice, it is the duty of the court to see that the parties shall not suffer by the delay. A *nunc pro*

*tunc* order should be granted or refused, as justice may require, in view of the circumstances of the particular case." [1]

This rule was applied in the case of *Coughlin* v. *District of Columbia*, 106 U. S. 7, 11. In that case, a judgment rendered upon a verdict in favor of the plaintiff had been erroneously set aside in the same court. A new trial was had, and a judgment for the defendant was reversed by this court, which affirmed the original judgment for the plaintiff as of the date when it was rendered, in order to prevent the action from being abated by the intervening death of the plaintiff.

In the present instance, upon the findings as originally made by the Circuit Court, judgment should have been rendered against Snow *de bonis testatoris;* the error of the court was in making it payable *de bonis propriis.* For this error it was reversed on the application of Smith, executor of Snow, who had procured himself to be substituted as plaintiff in error for that purpose. The mandate of this court was sent to the Circuit Court in form, reversing the original judgment, but, in substance, simply requiring its correction in the one particular in which the error had been committed. The manner in which this duty of the Circuit Court was performed, under the mandate of this court, was to enter the judgment *nunc pro tunc,* as of the time when it should have been entered in proper form. The reversal of the judgment in the Circuit Court, by the operation of the mandate of this court, and the execution of that mandate by the Circuit Court in entering the new judgment, was one continuous judicial act, and to that Smith, as executor of Snow, was a party, for he was a party to the record as plaintiff in error in this court. It cannot, therefore, be said that the action of the Circuit Court was *ex parte*, or that it was void, because it was directed against a deceased person not represented. This objection, if valid, would prevent, in all cases of the death of one of the parties, the entry of a judgment *nunc pro tunc*. It is the fact of such intervening death that creates the necessity, by which the power is justi-

---

[1] *Note by the Court.* This passage is incorrectly printed in the volume of reports.

fied, in order to prevent a failure of justice, for which the other party is not responsible, and by which, therefore, he should not suffer. The action of the court in making the entry in the form in which it was made was also, we think, a proper exercise of its discretion upon the circumstances of the case, as the object of the proceeding was to fix the liability of the estate of Gordon, as represented by his executor, Snow, in order that the judgment of Chapman might furnish ground for a creditor's bill, seeking to apply the assets of Gordon's estate to its payment. We hold, therefore, that the entry of the judgment against Snow, as executor of Gordon, was a valid and effectual exercise of the power and discretion of the court, and that the validity of the judgment itself cannot be impeached.

It is insisted, however, that the relief prayed for by the bill and awarded by the court, was barred by the proceedings of the probate court for the city and county of San Francisco. The statutes of California, Hittell, Gen. Laws California, 1850–1864, provide, that if a claim against the estate of a decedent, in course of distribution in the probate court, shall not be presented within ten months after the first publication of the notice to creditors, it shall be barred forever; unless when it shall be made to appear by the affidavit of the claimant, to the satisfaction of the executor and administrator and the probate judge, that the claimant had no notice, as provided by the act, by reason of being out of the State, in which case it may be presented at any time before a decree of distribution is entered. 5828, § 130. It is also provided, 5944, § 246, that, when the accounts of the administrator or executor have been settled, and an order made for the payment of debts and distribution of the estate, no creditor, whose claim was not included in the order of payment, shall have any right to call upon the creditors who have been paid, or upon the heirs, devisees, or legatees to contribute to the payment of his claim; but, if the executor or administrator shall have failed to give the notice to the creditors, as prescribed by the act, such creditor may recover on the bond of the executor or administrator the amount of his claim, or such part thereof as he would have

been entitled to had it been allowed. It is further provided, 5977, § 279, that, when an estate has been fully administered, and it is shown by the executor or administrator, by the production of satisfactory vouchers, that he has paid all sums of money due from him, and delivered up, under the order of the court, all the property of the estate to the parties entitled, and performed all the acts lawfully required of him, the court shall make a decree discharging him from all liability thereafter.

It is argued that Chapman, as a creditor of Gordon's estate, was bound to make himself a party to the proceedings in the probate court of San Francisco, for the purpose of obtaining payment and satisfaction of his claim; that, failing to do this, he is barred from any right to recover, either from the executor of that estate or from any legatee; that the defendants in this bill, as legatees of Gordon, received what was due them under his will under the sanction and by the order and judgment of the probate court of San Francisco, which vested them with an indefeasible title which must be respected in every other forum, if full faith and credit, according to the Constitution of the United States, is to be given in other states to the public acts and judicial proceedings of the courts of California.

But these positions are not tenable. The administration of the estate of Gordon, in California, under the orders of the probate court of San Francisco, was merely ancillary; the primary administration was that of the testator's domicil, Minnesota. Chapman was not a citizen of California, nor resident there; he was no party to the administration proceedings; he was not bound to make himself such. If he had chosen he could have proved his claim there and obtained payment, but he had the right to await the result of the settlement of that administration, and look to such assets of Gordon as he could subsequently find in Minnesota, whether originally found there or brought there from California by the executors or legatees of Gordon's estate. The assets in California finally distributed there, and brought into Minnesota by the executor or by any legatee, remained assets in Minnesota for the payment of any unpaid creditors choosing that forum. Such assets were impressed with a trust which such creditor had a right to have

administered for his benefit. *Aspden* v. *Nixon,* 4 How. 467; *Stacy* v. *Thrasher,* 6 How. 44; *Hill* v. *Tucker,* 13 How. 458; *Mackey* v. *Coxe,* 18 How. 100. It is upon the ground of such a trust that the jurisdiction of courts of equity primarily rests in administration suits, and in creditors' bills brought against executors or administrators, or after distribution against legatees, for the purpose of charging them with a liability to apply the assets of the decedent to the payments of his debts. As a part of the ancient and original jurisdiction of courts of equity, it is vested, by the Constitution of the United States and the laws of Congress in pursuance thereof, in the Federal courts, to be administered by the circuit courts in controversies arising between citizens of different states. It is the familiar and well settled doctrine of this court that this jurisdiction is independent of that conferred by the states upon their own courts, and cannot be affected by any legislation except that of the United States. *Suydam* v. *Broadnax,* 14 Pet. 67; *Hagan* v. *Walker,* 14 How. 28; *Union Bank* v. *Jolly,* 18 How. 503; *Hyde* v. *Stone,* 20 How. 170; *Green* v. *Creighton,* 23 How. 90; *Payne* v. *Hook,* 7 Wall. 425, 430.

In *Payne* v. *Hook, ubi supra,* the rule was declared in these words : " We have repeatedly held that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. If legal remedies are sometimes modified to suit the changes in the laws of the states and the practice of their courts, it is not so with equitable. The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses ; is subject to neither limitation nor restraint by state legislation, and is uniform throughout the different states of the Union."

The only qualification in the application of this principle is, that the courts of the United States, in the exercise of their jurisdiction over the parties, cannot seize or control property while in the custody of a court of the state. *Williams* v. *Benedict,* 8 How. 107; *Yonley* v. *Lavender,* 21 Wall. 276; *Freeman* v. *Howe,* 24 How. 450.

This exception does not apply in the present case, for the assets sought by this bill to be marshalled in favor of the complainant are not in the possession of any other court; they are in the hands of the defendants, impressed with a trust in favor of the complainant, a creditor of Gordon, and subject to the control of this court by reason of its jurisdiction over their persons.

It is further contended, however, on the part of the appellants, that, if the relief sought in this bill is not barred by the administration proceedings in California, it is, nevertheless, defeated by the application of the statute of limitations of the state of Minnesota. The statute of Minnesota, Gen. Stat. 1883, 826, c. 77, gives to unpaid creditors of the testator an action against the legatees, in which the plaintiff, in order to recover, is required to show that no assets were delivered by the executor or administrator of the deceased to his heirs or next of kin; or that the value of such assets has been recovered by some other creditor; or that such assets are not sufficient to satisfy the demands of the plaintiff. In the last case he can recover only the deficiency. The whole amount of the recovery shall be apportioned among all the legatees of the testator in proportion to the amount of their legacies respectively; his proportion only being recoverable against each legatee. In respect to this statutory right of action, however, it is provided in the same act, § 16, that no such action shall be maintained unless commenced within one year from the time the claim is allowed or established. It is maintained that, according to the judicial decisions of Minnesota, the creditor is required, first, to establish his claim by a separate judicial proceeding, and in a subsequent suit obtain the recovery provided for against the legatees. *Bryant* v. *Livermore*, 20 Minn. 313. It is admitted that the suit brought by Chapman in the Circuit Court of the United States against Snow, for the purpose of establishing his claim against Gordon's estate, answers the first of these conditions, but that, in order to fulfil the second, the present bill should have been filed within one year from the date of the final judgment in that action. The date of the judgment as originally rendered against Snow was April 19, 1872; the present bill was filed

August 20, 1879 ; and we are asked to hold that the right to sue was at that time barred by the statute of limitations. But the judgment rendered April 19, 1872, was not the end of the litigation; Snow himself sued out his writ of error to reverse it, and upon his death, in 1873, his executor, Smith, became a party, as plaintiff in error, and prosecuted the writ until the reversal of the judgment at the October term, 1876. The mandate of this court was filed in the Circuit Court June 7, 1877, and on December 18, 1878, the final judgment was entered against Snow as executor, to be paid and enforced out of the effects of the testator, John Gordon, deceased, as of July 10, 1871. The present bill was filed within twelve months after the date of that entry. If, for the purpose of determining the application of the statute of limitations, this judgment may be considered as dating from December 18, 1878, the bar was not complete. It is contended, however, that, as the entry of the judgment was made on that date *nunc pro tunc* as of July 10, 1871, the latter must be considered as the effective date of the judgment for all purposes. We are not, however, of that opinion. The date of that entry is by a fiction of law made and considered to be the true date of the judgment for one purpose only, and that is to bind the defendant by the obligation of the judgment entered as of a date when he was in full life ; but the right of the complainant in this bill to enforce that judgment by the present proceeding certainly did not begin until after the judgment in that form was actually entered. Until that time the right was in abeyance; the litigation had, until then ended, been continuously in progress. It cannot be that the statute of limitations will be allowed to commence to run against a right until that right has accrued in a shape to be effectually enforced.

In *Tapley* v. *Goodsell*, 122 Mass. 176, it was held that a judgment entered *nunc pro tunc* was the final judgment in the action, so as to charge sureties on an attachment bond, on whose behalf it was urged that they could not be considered in default by reason of not paying, for thirty days after its date, the amount of a judgment which had no actual existence until long after the thirty days had expired. And it was

there pointed out that a judgment may have effect from one date for one purpose and from another date for another purpose. As in the case of judgments at common law, which had relation to the first day of the term, so as to bind the lands of the debtor of which he was then seised, even though he had aliened them *bona fide* before judgment actually signed and execution issued; and the statute, 29 Car. II, c. 3, §§ 13–15, providing that, as against *bona fide* purchasers, they should be deemed judgments only from the time when they were actually signed, did not restrict their validity or effect, in law or equity, by relation to the first day of the term, as against the debtor or other persons. *Odes* v. *Woodward*, 2 Ld. Raym. 766; *S. C.* 1 Salk. 87; *Robinson* v. *Tonge*, 3. P. Wms. 398.

It follows, therefore, that, if this were a suit brought in a state court of Minnesota under the statute in question, it would not be barred by the limitation sought to be applied. Whether that statute has any application to this bill in equity, filed in the Circuit Court of the United States for the District of Minnesota, by a citizen of another state, is a question which need not be considered or decided. It is enough to say that the right of the complainant is not barred by force of the state statute, and that, according to the principles of equity, there has been no such voluntary delay as would make his claim stale. On the contrary, the complainant has shown himself to be diligent, active, and eager in the prosecution of his claim and the pursuit of his remedy. He has been guilty of no laches; the delay has been caused by the action of his adversaries, or by the necessary delays of litigation. He is an unpaid creditor of Gordon's estate, who has sought by every means in his power, both at law and in equity, to obtain satisfaction of a just claim. The defendants are shown to be in possession of the assets of Gordon's estate, which ought to have been applied in its satisfaction; they should be held as trustees for that purpose. Such was the decree of the Circuit Court, which is hereby

*Affirmed.*