IN RE, DELKS ESTATE.

Opinion delivered June 8, 1899.

*1.  Appeal—Record—Presumption.*

In the absence of a complete record on appeal, the presumption is that the action of the trial court was correct.

*2.  Indian Citizens—Juridsiction of United States Court of Estate of.*

Under the act of May 2, 1890, the United States Court in the Indian Territory has jurisdiction of an estate of a deceased Indian, when citizens of the United States are creditors or distributees of the estate.

*3.  Probate Court—Appeal.*

Chapter 42 Mansf. Dig. allowing an appeal from the Probate to the Circuit Court has never been put in force in the Indian Territory and no such appeal is allowed.

CLAYTON, J., dissents.

Appeal from the United States Court for the Northern District.

WM. M. SPRINGER, Judge.

Motion to confirm appointment of L. A. Keys as administrator of David M. Delk, deceased, and to approve his bond, was granted over the protest of Lizzie Delk, or Wilkinson. She appeals. Affirmed.

On October 8, 1896, motion was filed in the United States district court at Vinita to confirm the appointment-ment of L. A. Keys as administrator of the estate of David M. Delk, deceased, which appointment has been made by the clerk of the court in vacation, on, to wit, August 14,

1896. On the 17th day of October, 1896, a protest was filed against the confirmation of said Keys as administrator by Lizzie Delk, or Wilkinson, in which she alleges that she was married to said David M. Delk, deceased, on the 11th day of March 1878, according to the Cherokee laws; that she is a citizen of the Cherokee Nation by blood, and Delk, being a white man, became, by virtue of said marriage, a Cherokee citizen by adoption; that they had never been divorced, though not living together at the time of his death; that he left no children, and died intestate; that he died May 26, 1896; that she, as his wife and nearest heir, made application to the district judge of Cooweescoowee district, Cherokee Nation, for letters of administration on his estate, which were granted, that on July 26, 1896, a petition was filed in the United States district court in Vinita, asking that Leander A. Keys, a Cherokee citizen, be appointed administrator of the estate of said Delk, which was granted by the clerk. She protests against the confirmation of Keys, on the following grounds, to wit: "That the deceased was a citizen of the Cherokee Nation, as are also said Leander A. Keys and protestant, and that this court has no jurisdiction of the parties or the suject-matter, but that said estate should be administered under the Cherokee laws;" that she will administer the estate if not interfered with; "that she denies each and every material allegation set up in the petition for the appointment of Leander A. Keys." She files certified copy of record of marriage and marriage license and her affidavit showing she and deceased lived together about one month after their marriage in 1878, when deceased sent her away, and refused to live with her any longer. She files certified copy of bond and letters of administration from the Cherokee court. On October 17, 1896, the motion to confirm the appointment of Leander A. Keys, approve his bond, and the protest of Lizzie Wilkinson, was heard by Judge Springer, and the appointment of Keys was confirmed, and his

bond approved. On October 19, 1896, Keys, as administrator, was authorized to sell the personal property, except as choses in action, of the estate of Delk, over the protest of said Lizzie Wilkinson, by order of the court. On the same day motion and affidavit of appeal were filed by Lizzie Delk, or Wilkinson, that "appeal from the order of the court sitting in probate be granted to the United States court at Vinita, exercising like jurisdiction as the circuit court of the state of Arkansas, under Mansfield's Digest." On October 21, 1896, appellant filed a motion for new trial, which was overruled by the court, and she appealed to this court.

*Davenport & Dugger*, for appellant.

*W. H. Kornegay*, for appellee.

TOWNSEND, J. The appellant files five specifications of error, which are as follows, to wit: "(1) The court erred in law in taking the administration of the said estate of David M. Delk, deceased, out of the Cherokee court, and placing said administration in the United States court, when the proof showed the deceased to be a Cherokee citizen and that said estate had been administered on by this defendant, now the appellant, in the Cherokee court, prior to the granting of the letters of administration to the said appellee in the United States court. (2) The court erred in law in holding that the United States court had jurisdiction to administer on the estate of Cherokee citizens when it was shown that any United States citizen was remotely interested. (3) The court erred in confirming the appointment of the administrator in the United States court when there was a Cherokee forum in which the said estate had been administered in. (4) The court erred in law in holding that the act of congress of May 2, 1890, provided for the administration of Cherokee decedents in the United States court, when a United States

citizen was a creditor of the deceased.    26 Stat. 81.    (5) The court erred in denying the defendant an appeal to the United States court at Vinita, exercising like jurisdiction as the circuit court of the state of Arkansas, under Mansfield's Digest, after the defendant had filed her motion for appeal as provided by law."

The record brought here by the bill of exceptions is imperfect.    In the protest filed by appellant she says "that she denies each and every material allegation set up in the petition for the appointment of Leander A. Keys," but the petition of Keys is not brought here by the bill of exceptions; neither is there any evidence brought here that may have been submitted; and no statement is made that evidence was submitted; no findings of fact or conclusions of law are brought here, except the order of the court confirming the appointment of Keys.    In the absence of a complete record, the presumption is that the action of the court was correct. Under the act of congress approved May 2, 1890 (26 Stat. 81), it is provided; "Nothing in this act shall be so construed as to deprive any of the courts of the civilized nations of exclusive jurisdiction over all cases arising wherein members of said nations, whether by treaty, blood or adoption, are the sole parties."    Appellant, in argument, seems to think that this statute in prohibitory of jurisdiction to the United States court, but does this statute exclude jurisdiction in matters of probate where United States citizens are creditors or distributees, as shown by the petition for appointment of administrator?    We think not.    It is insisted by appellee that if a complete record had been brought up it would show exactly this state of facts.    The court may have been satisfied that the appelle was not qualified to act as administrator under the laws in force, but by reason of the incomplete record this court cannot say how that is.

So far as the error alleged in the fifth specification

is concerned, it is sufficient to say that chapter 42, under which such appeals are allowed, has never been put in force in the Indian Territory. It is therefore ordered that the appeal be dismissed and the judgment of the court below be confirmed.

THOMAS, J., concurs.

CLAYTON, J. (dissenting). In this case the deceased was a Cherokee Indian. The wife of the deceased, also a Cherokee Indian, a proper person under the Cherokee laws, had been regularly and lawfully appointed by the Cherokee courts the administratrix of the estate of her deceased husband, had given the bond required by law, and had taken in charge all of the assets of the estate, and was proceeding to administer same, when, at the suit of a white man, who was a creditor of the estate, the United States court for the Northern district of the Indian Territory, over the protest of the Cherokee administratrix, appointed another administrator, who was directed to possess himself of the assets, and, with the exception of the choses in action, to sell them; the effect of which was to discharge the Cherokee administratrix, and to take from the Cherokee courts any direction or control of the administration, which was assumed by the United States court. The majority of this court sustain this action of the United States court on the ground that the white creditor was authorized to bring his suit by virtue of the act of congress of May 2, 1890 (26 Stat. 81) entitled "An act to provide a temporary government for territory of Oklahoma, to enlarge the jurisdiction of the United States court in Indian Territoiy, and for other purposes," the jurisdictional clauses of which are contained in sections 29 and 31, and are as follows: "That the court established by said act shall in addition to the jurisdiction conferred thereon by said act, have and exercise, within the limits of the Indian Territory, jurisdiction in all civil cases in the Indian Terri-

tory, except cases over which the tribal courts have exclusive jurisdiction; and in all cases of contracts entered into by citizens of any tribe or nation with citizens of the United States in good faith and for valuable consideration, and in accordance with the laws of such tribe or nation; and such contracts shall be deemed valid and enforced in such courts." Section 31 provides: "But nothing in this act shall be so construed as to deprive any of the courts of the civilized nations of exclusive jurisdiction over all cases arising wherein members of said nations, whether by treaty, blood or adoption, are the sole parties." Under the provision of this act, I concede that a white man, being a creditor of an estate of a deceased Indian, may sue the Indian administrator in the United States court; but there is a vast difference between suing an administrator and wresting from the Indian probate court jurisdiction of the whole administration of the estate. The proceedings, judgments, and decrees of these Indian courts are upon the same footing, and entitled to the same faith and credit, as the courts of the territories; and judgments of the territories are, by statute, placed upon the same footing as those of the states. Mehlin vs Ice. 5 C. C. A. 403, 56 Fed. 19; Davison vs Gibson, 12 U. S. App. 364, 5 C. C. A. 543, and 56 Fed. 443; Exendine vs Pore, 6 C. C. A. 112, 56 Fed. 777; Standley vs Roberts, 8 C. C. A. 305, 59 Fed. 836; Mackey vs Coxe, 18 How. 100. The case of Byers vs McAuley, 149 U. S. 608, 13 Sup. Ct. 906, is, in my judgment, conclusive of this case. This was a case arising in Pennsylvania, wherein a United States court, at the suit of a nonresident claimant to an interest in an estate in Pennsylvania, then in course of administration by the state probate court, took charge of the estate, and undertook to devest the administrator of all control thereof, and to control the administration of the estate, on the theory that it was a suit in which a nonresident of the state of Pennsylvania had such an interest as

(37)

entitled him, under the provision of the federal statute, to sue in the courts of the United States. The federal statute (1 Supp. Rev. St. U. S. p. 611) provides: "That the circuit courts of the United States shall have original jusisdiction, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interests and costs, the sum or value of two thousand dollars, and arises under the constitution or laws of the United States, or treaties made or which shall be made under their authority; or in which controversy the United States are plaintiff or petitioners; or in which there shall be a controversy between citizens of different states, in which the matter in dispute, exceeds, exclusive of interest and costs, the sum or value aforesaid." This statute, and the one conferring jurisdiction on the United States courts in the Indian Territory, supra, in so far as this question is concerned, are similar, and in principle, it seems to me, identical. The one confers, jurisdiction on the circuit courts of the United States to hear and determine "all suits of a civil nature, in law or in equity," wherein one of the parties to the suit is a citizen of a different state to the other. The other confers jurisdiction on the United States court for the Indian Territory to hear and determine the controversy in all cases in which one of the parties to the suit is a noncitizen of an Indian tribe. It will be conceded, I presume, that because one statute uses the word "suits" and the other "cases," that, as far as the question now here presented is concerned, makes no difference. If the United States circuit court, at the suit of a citizen of a different state from the defendant administrator in a action, the plaintiff having an interest in the estate, or being a creditor, cannot take into its custody and control the assets of the estate of a decedent, the United States courts of the Indian Territory cannot do so as to the estate of an Indian at the suit of a noncitizen of an Indian tribe; and in

the case of Byers vs McAuley, above referred to, the supreme court of the United States directly decides, so far as the circuit courts of the United States are concerned, it' cannot be done. Mr. Justice Brewer, speaking for the court, says: "It is obvious from the decree which was entered that the circuit court of the United States assumed full control of the administration of the estate. * * * Indeed, the decree, as a whole, cannot be sustained unless upon the theory that the federal court had the power, on the filing of the bill, to take bodily the administration of the estate out of the hands of the state court, and transfer it to its own forum. * * * In order to pave the way to a clear understanding of this question, it may be well to state some general propositions which have become fully settled by decisions of this court; and, first, it is a rule of general application that, where property is in actual possession of one court of competent jurisdiction, such possession cannot be disturbed by process of another court. The doctrine has been affirmed again and again by this court. Hagan vs Lucas, 10 Pet. 400; Taylor vs Carryl, 20 How. 583; Peck vs Jenness, 7 How. 612, 625; Freeman vs Howe, 24 How. 450; Ellis vs Davis, 109 U. S. 485, 498, 3 Sup. Ct. 327; Krippendorf vs Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Covell vs Heyman, 111 U. S. 176, 4 Sup. Ct. 355; Borer vs Chapman, 119 U. S. 587-600, 7 Sup. Ct. 342. In Covell vs Heyman, supra, the matter was fully discussed, and in the opinion of Mr. Justice Matthews, on page 179, 111 U. S , and page 356, 4 Sup. Ct., the rule is stated at length: 'The point of the decision in Freeman vs Howe, supra, is that when property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law, and within the exclusive jurisdiction of the court from which the process has issued for the purposes of the writ; that the possession of the officer cannot be disturbed by process from any state court, because to disturb that possession would be

to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer; that any person not a party to the suit or judgment, whose property has been wrongfully, but under color of process, taken and withheld, may prosecute, by anciliary proceedings, in the court whence the process issued, his remedy for restitution of the property or its proceeds, while remaining in control of that court, but that all other remedies to which he may be entitled against officers or parties, not involving the withdrawal of the property or its proceeds from the custody of the officer and the jurisdiction of the court, he may pursue in any tribunal, state or federal, having jurisdiction over the parties and the subject-matter.' * * * An administrator appointed by a state court is an officer of that court. His possession of the decedent's property is a possession taken in obedience to the orders of that court. It is the possession of the court, and it is a possession which cannot be disturbed by any other court. Upon this proposition we have direct decisions of this court. In Williams vs Benedict, 8 How. 107, 112, it is said: 'As, therefore, the judgment obtained by the plaintiffs in the court below did not entitle them to a prior lien, or a right of satisfaction in preference to the other creditors of the insolvent estate, they have no right to take in execution the property of the deceased, which the probate court has ordered to be sold for the purpose of an equal distribution among all creditors. The jurisdiction of that court has attached to the assets. They are in gremio legis. And, if the marshal were permitted to sieze them under an execution, it would not only cause manifest injustice to be done to the rights of others, but be the occasion of an unpleasant conflict between courts of separate and independent jurisdictions.' And in Yonley vs Lavender, 21 Wall. 276, it was held that where the statute of a state places the whole estate, real and personal, of the decedent, within the cus-

tody of the probate court of a county, a nonresident creditor may get a judgment in the federal court against the resident executor or administrator, and come in under the law of the state for such payment as that law, marshaling the rights of creditors, awards to creditors of his class; but he cannot, because he has obtained a judgment in the federal court, issue execution, and take precedence of other creditors, who have no right to sue in the federal courts; and, if he do issue execution and sell the lands, the sale is void. * * * It was thereafter, in contemplation of law, in the custody of the probate court, of which the administrator was an officer, and during the progress of administration was not subject to seizure and sale by any one. The recovery of judgment gave no prior lien on the property, but simply fixed the status of the party, and compelled the administrator to recognize it in the payment of debts. It would be out of his power to perform the duties with which he was charged by law if the property entrusted to him by a court of competent jurisdiction could be taken from him, and appropriated to the payment of a single creditor, to the injury of all others. How can he account for the assets of the estate to the court from which he derived his authority, if another court can interfere, and take them out of his hands?' See, also, Vaughn vs Northup, 15 Pet. 1; Peale vs Phipps, 14 How. 367. There is nothing in any decision of this court controverting the proposition thus stated that the administrator is the officer of the state court appointing him, and that property placed in his possession by order of that court is in the custody of the court.'' In this case, the original administratrix was an officer of the Cherokee court, and her possession of the assets was the possession of that court. The property taken into possession and ordered by the United States court to be sold by the administrator appointed by it was taken from the custody of the Cherokee court. The decedent was a Cherokee Indian, and, as far as

the record shows, all parties interested, save this one white creditor, were Cherokee citizens, whose rights had arisen through contracts with the deceased during his lifetime, or by virtue of their kinship with him, all to be determined by reference to Cherokee laws, under which these rights arose. That, under these circumstances, the white creditor may sue the administratrix and her bondsmen in the United States court, or in that forum reduce his claim to judgment, there is no question; but, in my opinion, that court had no jurisdiction to take the assets of the estate of a Cherokee Indian, which were being administered by the Cherokee courts, into its custody, either by the appointment of another administrator, or of a receiver, or in any other way, or to proceed in any way in the administration of the estate.