**NEWHOUSE et al. v. CANAL NATIONAL BANK OF PORTLAND, et al.**

No. 689.

United States District Court
D. Maine, S. D.

Dec. 21, 1950.

---

1. No opinion for publication.

Jacob H. Berman, Edward J. Berman, Sidney W. Wernick and Clement F. Robinson, all of Portland, Me., for plaintiffs.

Leonard A. Pierce, Charles W. Allen and Sidney W. Thaxter, all of Portland, Me., for defendants.

CLIFFORD, District Judge.

This matter came on to be heard on the Court's own motion that the question of jurisdiction be determined prior to trial of the case on its merits. Oral arguments were made and brief submitted on this issue, and it is now before this Court for determination.

It is agreed that there is diversity of citizenship between the parties and that the amount in controversy, exclusive of interest and costs, exceeds $3,000. This Court has jurisdiction of the case, unless the facts alleged in the complaint state a cause of action which is beyond the jurisdiction of this Court, under the rules stated in Waterman v. Canal-Louisiana Bank Co., 1909, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80.

The plaintiffs are certain of the beneficiaries of a trust established under the Will of Mary J. E. Clapp. This action is against the present trustees individually, and in their capacity as trustees; and against the Canal National Bank of Portland, a third party, individually, and in its capacity as trustee under a mortgage indenture with the Clapp estate.

The plaintiffs assert that they are seeking in their complaint only an *in personam* judgment against the trustees, claiming that there has been use of trust income in a way that violates the provisions of the trust; and, in addition to that, they are seeking to impose liability on a third person, namely, the Canal National Bank of Portland, on the theory that the Bank, with knowledge or notice of this violation of the terms of the trust, received and paid out such trust income. The plaintiffs demand that the Canal National Bank of Portland "be adjudged and be held as trustee for the benefit of the plaintiffs, in accordance with their respective interests as beneficiaries of the Clapp trust, of all the net rents of the Clapp

Memorial Building and rear parking lot received by said Bank from the defendants, Sidney St. F. Thaxter and Montgomery Blair, Jr., or either of them, in each and every year from 1934 to May, 1947, inclusive;" that the Bank make an accounting to the plaintiffs of "all monies received by it, being net rentals from the Clapp Memorial Building and rear parking lot" during the 13 years mentioned; that judgment be rendered against the Bank in favor of the plaintiffs "for the amount each plaintiff is entitled to receive as his pro rata share, in accordance with his respective interest as a beneficiary of the Clapp trust, of the net rents" herein mentioned, which the Bank received from said trustees during the 13 year period, and for such further relief as the nature of the case may require.

Substantially the same demands are made and the same relief is sought by the plaintiffs against each of the named trustee defendants, for the net rents of the Clapp Memorial Building and rear parking lot received by either or both of them during the years in question and paid to the Canal National Bank of Portland or to any other person except as a beneficiary of the Clapp trust; and that judgment be rendered against the trustees in favor of each of the plaintiffs as their interest may appear.

The defendants contend that the real and vital issue in this case is res judicata. In support of this contention they assert that the allowance of the annual probate accounts, showing the payments made for interest due under the mortgage indenture and the source from which they came, is an adjudication by the Probate Court that the payments were proper; and since these decrees were not appealed from, they have become res judicata and are not subject to collateral attack. The defendants further contend that a decision of these issues now before this Court necessarily involves an examination and revision of all of the accounts previously approved by the Probate Court, and a review of the entire administration of the trust during the 13 year period. For these reasons the defendants assert that under the applicable decisions of the courts, both State and Federal, this Court lacks jurisdiction to consider and determine the issues of this case, and that the sole jurisdiction relating to these issues is in the Probate Court for the County of Cumberland, State of Maine.

It becomes necessary and relevant to a discussion of the issue of jurisdiction to review briefly the background of the case and the legal proceedings which have previously been taken in the courts of the State of Maine.

Mrs. Mary J. E. Clapp died in September, 1920. Her Will was probated and allowed in the Probate Court for the County of Cumberland, the following month, in October, 1920. Defendants Sidney St. F. Thaxter and Montgomery Blair Jr., are the successor trustees of the trust established by that Will, having been appointed and duly qualified by the Probate Court. Among the property included in the residuary trust created by the Will was the so-called Homestead Lot, which had been occupied by the Clapp family. By the twelfth clause of her Will, Mrs. Clapp directed that the Homestead Lot be retained by the trustees during the entire life of the trust and that "no portion thereof be sold or otherwise disposed of except by ordinary and customary leases." In her Will she directed that the Homestead be taken down and that, in its place, "a handsome, substantial and imposing block" be erected in memory of her father and grandfather, to be "especially adapted for occupancy by stores, offices and halls". She further authorized the trustees to use any other portions of her real and personal estate as were necessary for the purpose of erecting the Clapp Memorial Building. She recommended that the construction of the Clapp Memorial Building should cost not less than $300,000.00.

In 1922 the then trustees instituted a proceeding before the Supreme Judicial Court of Maine, in Equity, asking the Court to determine whether they had authority under the terms of the Will to borrow money on the credit of the estate, enforceable against the entire assets of the trust, and further asking for authority to borrow money and procure loans, to give promissory notes, bonds, or other obligations in their capacity as such trustees, enforceable against the entire trust estate, except said Homestead

Lot. The defendants in said proceeding were the then beneficiaries of the trust, being all the persons then in being who had any interest either in the income or principal, and included the plaintiffs in this proceeding. On May 10, 1922, Justice Scott Wilson issued a final decree which provided that the trustees were authorized, under the terms of the Will, for the purpose of erecting the Clapp Memorial Building, "to borrow money and procure loans from time to time, to give promissory notes, bonds and other obligations in their capacity as trustees, enforceable against the whole trust estate, except said Homestead Lot." Pursuant to this decree, the trustees under the Will executed and delivered to the Canal National Bank of Portland, as trustee, a mortgage indenture providing for the issue of $300,000.00 principal amount of bonds of the estate, secured exclusively by the so-called "Clapp Block" (not to be confused with the Clapp Memorial Building, later erected on the Homestead Lot). The bonds were issued, in accordance with the decree, to mature on June 1, 1937. The proceeds of the bonds were used by the trustees for the erection of the Clapp Memorial Building, as directed by the Will. On the maturity of the bonds, on June 1, 1937, the estate was unable to pay the principal amount due, for reasons not material here. Accordingly, an extension agreement was entered into in May, 1938, as of June 1, 1937, between the trustees of the estate and the Canal National Bank of Portland, as trustee under the mortgage indenture for the holders of the bonds. The time for payment under the extension agreement was moved forward to June 1, 1947.

By the terms of the Will, dealing with the Homestead Lot and the building to be erected thereon, it was specified that: "The net rents thereof and of whatever building may be thereon shall be taken as a part of the net income of the trust aforesaid * * subject to the special provisions herein concerning the same."

The Will also contained the following provision: "The entire net income of the trust * * * shall annually, or oftener, at the discretion of said trustee, be paid over to or applied for the benefit of" the designated beneficiaries.

Prior to 1934 the trustees commingled all of the income of the trust estate, including that from the Clapp Memorial Building. From that fund they paid the interest due on the bonds under the mortgage indenture, paid other expenses incidental to the administration of the trust, and paid the balance of such income to the named beneficiaries under the Will.

No claim is asserted here by the plaintiffs for rent received from the Clapp Memorial Building prior to 1934.

In 1934 the net income from the estate materially decreased as the result of the bankruptcy of a tenant which had been paying a substantial rental. Thereafter, until May, 1947, the trustees used all the income, including that from the rentals of the Clapp Memorial Building, in payment of the expenses of administration of the trust and the interest due on the mortgage bonds. In short, they continued the practice followed by them from the inception of their duties as trustees.

On May 16, 1947, at the request of the Canal National Bank of Portland and in accordance with the terms of the original mortgage indenture, the trustees of the estate executed a supplemental mortgage indenture, conveying to the Canal National Bank of Portland, as further security for the payment of the bonds, all the remaining unencumbered real estate of the trust, with the exception of the Clapp Memorial Building and the parking lot in the rear, which together constitute the Homestead Lot.

On May 26, 1947, a bill in equity was filed by the then trustees of the estate, defendants Sidney St. F. Thaxter and Montgomery Blair, Jr., seeking instructions as to whether the trustees were authorized to use the income from the Clapp Memorial Building in the payment of either interest or principal on the bonds. The defendants allege that that proceeding was begun because one of the beneficiaries, a plaintiff herein, had questioned whether the trustees had that authority. On June 1, 1947, the estate defaulted in the payment of the

principal, the whole of which was then due, and of the six months' interest then due. On June 17, 1947, the Justice before whom the bill in equity had been brought appointed the trustees of the estate as temporary receivers to collect the income from the entire estate, to pay the necessary operating expenses, and to hold the balance of the income subject to the further order of the Maine Court. At the present time, the trustees are still serving as such temporary receivers of the income. On October 8, 1947, the Canal National Bank of Portland filed a petition seeking leave to institute proceedings to foreclose the mortgage. The lower court granted such leave, and subsequently such proceedings were started; the property was foreclosed and sold at auction; and by order of the court a distribution from the proceeds of the sale was made to the bondholders, amounting to slightly more than $200,000.

On May 27, 1948, evidence was taken out with respect to the bill in equity by the Honorable Edward F. Merrill, then a Justice of the Superior Court of Maine, and was reported to the Supreme Judicial Court for consideration. On June 13, 1949, the Supreme Judicial Court, Thaxter v. Canal Nat. Bank, Me., 67 A.2d 21, handed down an opinion in which the Court held that the bondholders, and the Canal National Bank as trustee under the mortgage indenture, were precluded by the terms of their contracts with the trust from enforcing any judgment against the Homestead Lot, and that they were not entitled to have the income from the Homestead Lot applied in payment of either the principal or interest on the bonds. The Supreme Judicial Court further held that the trustees, Sidney St. F. Thaxter and Montgomery Blair, Jr., were authorized to pay the "Net Rents" then in their hands, and available thereafter, to the beneficiaries.

A secondary issue before the Supreme Judicial Court at that time was the legal status of Sheridan Brooks Fry, one of the plaintiffs herein, as a beneficiary of the trust, in view of certain provisions of a codicil to the Clapp Will. When this question had first arisen in the administration of the trust, the trustees had construed those provisions to exclude Fry from any beneficial rights because of his marital status. In the 1949 decision, the Maine Court held that Sheridan Brooks Fry was not precluded by those provisions from participating in the income of the estate.

On February 6, 1950, the present suit was instituted in this Court by certain of the beneficiaries, claiming that the defendant trustees committed a breach of trust by paying the "Net Rents" of the Homestead Lot to the Canal National Bank of Portland for payment to the bondholders as interest on the bonds, during the period beginning 1934 until May, 1947.

None of the annual accounts of the trustees during this period, with one exception, was objected to or appealed from by any of the beneficiaries of the trust, including the plaintiffs herein. The defendants allege that notice of the filing of all such accounts was given in accordance with the Maine statute, and, in addition, that three of the within named plaintiffs received actual notice of the filing of each account, and a copy of each account, during the years in question. The plaintiffs, on the other hand, challenge defendants' contentions relating to notice.

Objection was made to the account for 1934, by the father and predecessor in interest of three of the plaintiffs herein, and by one other named beneficiary. A full hearing was had on those objections before the Probate Court in 1935, and the Judge of Probate shortly thereafter issued his findings and decree, in which he approved and allowed the account as filed, with one minor exception. An appeal from this decision was heard and dismissed by the Supreme Court of Probate; and the objecting parties failed to exercise their right to pursue their remedies in the Supreme Judicial Court of Maine by exceptions or appeal.

The trust has not, as yet, expired by its terms; and no final decree of distribution of the trust corpus has been entered in any court. There is no allegation of fraud or mistake of fact, with respect to any of these thirteen accounts.

The present action was commenced in this Court; and no proceedings have been

instituted in any Court of the State of Maine involving the determination of the issues here presented.

■ The applicable rules with reference to the jurisdiction of this Court to entertain the complaint were stated by the United States Supreme Court in Waterman v. Canal-Louisiana Bank Co., 1909, 215, U. S. 33, at pages 43 to 45, 30 S.Ct. 10, 12, 54 L.Ed. 80.

"* *· * This court has uniformly maintained the right of Federal courts of chancery to exercise original jurisdiction (the proper diversity of citizenship existing) in favor of creditors, legatees, and heirs, to establish their claims and have a proper execution of the trust as to them. * * *

"The rule stated in many cases in this court affirms the jurisdiction of the Federal courts to give relief of the nature stated, notwithstanding the statutes of the state undertake to give to state probate courts exclusive jurisdiction over all matters concerning the settlement of accounts of executors and administrators in the distribution of estates. This rule is subject to certain qualifications * * *. The courts of the United States, while they may exercise the jurisdiction, and may make decrees binding upon the parties, cannot seize and control the property which is in the possession of the state court."

The Court in the Waterman case, speaking of Farrell v. O'Brien, 1905, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101, said that:

"That case recognized what previous cases had held,—that, in proceedings purely of a probate character, there was no jurisdiction in the Federal courts. This was in harmony with the rule theretofore laid down in Byers v. McAuley [893, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867], in which it was held that the Federal court could not exercise original jurisdiction to draw to itself the entire settlement of the estate of the decedent and the accounts of administration, or the power to determine all claims against the estate. But it was there decided that a circuit court of the United States could entertain jurisdiction in favor of citizens of other states, to determine and award by decrees binding *in personam* their shares in the estates." 215 U.S. at pages 44, 45, 30 S.Ct. at page·13.

The reason for the exclusion of purely probate matters from the Federal jurisdiction is stated in Farrell v. O'Brien, supra, 199 U.S. at page 110, 25 S.Ct. at page 734:

"* * * as the authority to make wills is derived from the states and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States". Accord, Sutton v. English, 1918, 246 U.S. 199, 38 S.Ct. 254, at page 256, 62 L.Ed. 664.

This Court, in Thompson v. Nichols, D.C. Me. 1919, 254 F. 937, indicated (page 982) that the "purely probate" matters to which the rule refers are those concerning the initial probate of the Will or estate, and the appointment of the executors, administrators, or trustees to carry out the responsibility of administering the Will or the estate. In the present case, this Court has not been asked to rule on the validity of the Clapp Will, or to remove an executor or trustee appointed by the Probate Court, actions which would be matters of "pure probate" as above defined.

Nor does the qualification to the rule, noted by the Supreme Court in the Waterman case, apply here. Even though the corpus of the Clapp trust is in the constructive possession of the Probate Court for Cumberland County, in view of the continuing control which that Court is exercising over the trust, still the relief here sought from this Court will not interfere in any way with the Probate Court's full power over the trust corpus. This Court has not been asked to order, or to forbid, the trustees to take any action with respect to trust money now in their hands. No relief is asked from the trust, nor is any demanded on behalf of the trust. This Court is not asked to regulate the future administration of the trust, nor the accountings thereof. The issues here relate to money previously paid from the trust income and

accounted for, and therefore now out of the possession of the Probate Court. Borer v. Chapman, 1887, 119 U.S. 587, 7 S.Ct. 342, 30 L.Ed. 532; Cottingham v. Hall, 4 Cir., 1932, 55 F.2d 664; Hale v. Coffin, C.C., D.Me. 1902, 114 F. 567.

■ This Court finds that it has jurisdiction in equity to consider and decide the issues presented in the case at bar.

■ Finally, no consideration has appeared which warrants this Court, in its discretion, to decline to exercise its jurisdiction over the subject matter of this case.

As has been pointed out, it may be necessary, in order to reach a decision on the merits, to examine the thirteen accounts previously settled in the Probate Court. Defendants suggest that this examination, and any resulting computations, under the circumstances herein existing, will amount either to a reopening of these accounts, which, the defendants contend, are res judicata, or to such an examination into the administration of the estate as this Court should decline to undertake.

In the opinion of this Court, it is in no sense a reopening of the accounts to examine them for the purpose of determining what issues the Probate Court purported to decide in allowing them. Nor will it be a readministration of the trust to ascertain whether the Probate Court, in allowing the accounts, followed the requirements as to notice and procedure laid down in the Constitution and statutes of Maine and in the Constitution of the United States. It is frequently necessary to make such an examination, when a judgment is brought into issue in a subsequent controversy, in order to determine the validity of the prior judgment and its effect on the pending controversy.

■ The question of the authority of the Probate Court to determine the issues here presented, by its approval of the trustees' annual accounts, has been fully and ably argued, both orally and in writing. In the view of this Court, however, this question is but one of the matters which should come before this Court in determining the issues on the merits, and therefore should not be decided at this time.

In the event that this Court finds that the issues of this case have not been conclusively decided by the Probate Court, and if, after a full consideration of all of the evidence adduced at the trial on the merits, the defendants are found liable to the plaintiffs, as alleged in the complaint, then the amounts appearing on the probate accounts will become material, but only as an aid in computing the amount of damages. There is no need for this Court to change the accounts or to determine whether receipts and payments were other than as the accounts indicate, or whether the trustees were paid more or less than a proper commission. It is not necessary to adjust the figures for the balance remaining in the estate. All that is required is for this Court to take from the accounts, as approved by the Probate Court, those figures which are relevant in ascertaining the amount of the "net rents" of the Clapp Memorial Building paid over as interest on the mortgage bonds. If it is necessary to allocate certain expense items between different sources of income, that allocation will be merely a matter of computation.

This Court finds that the facts alleged in the present proceeding bring it well within the rule of Commonwealth Trust Co., of Pittsburgh v. Bradford, 1936, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920, and Waterman v. Canal-Louisiana Bank Co., supra, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80. It is distinguishable from Princess Lida of Thurn and Taxis v. Thompson, 1939, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (where the proceedings were at least partly in rem; and parallel proceedings had previously been brought in the State courts), and from Kittredge v. Stevens, 1 Cir., 1942, 126 F.2d 263 (where the Federal Court was asked to make a detailed review of the general administration in several probate matters).

There is no question that the appropriate State court of Maine could have determined the issues of this case fully and fairly, had the case been brought before it. However, the case is in this Court; and under the circumstances stated herein, this Court is constrained to exercise its jurisdiction.

The case will be set down for further proceedings on the merits.